PERROW v. SAN ANTONIO & A. P. RY. CO.
(No. 5484.)

(Court of Civil Appeals of Texas. Austin. May 26, 1915.)

1. TRIAL ☞191—INSTRUCTIONS—ASSUMPTION OF FACTS.

In a suit to remove a cloud from land, where the evidence raised the issue whether the land was a public alley, a charge assuming that it was not is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. ☞191.]

2. TRIAL ☞194—INSTRUCTIONS—WEIGHT OF EVIDENCE.

Plaintiff sued to remove a cloud from his title, and defendant asserted that the strip of land in controversy was a public alley. Held, that in determining the question the jury were entitled to consider that defendant's deed made calls for the alley, and a charge to the contrary is improper, being on the weight of the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. ☞194.]

3. APPEAL AND ERROR ☞1071 — REVIEW — DETERMINATION.

Where there was testimony authorizing the court to make such additional findings as were necessary to support the judgment, it will not be reversed because the facts found by the jury were insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. ☞1071.]

4. DEDICATION ☞44—EXISTENCE OF ALLEY—EVIDENCE—SUFFICIENCY.

In a suit to remove a cloud from title to a strip of land, evidence held to show that it was a public alley.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 85–87; Dec. Dig. ☞44.]

5. APPEAL AND ERROR ☞695 — STATEMENT OF FACTS—SUFFICIENCY.

The statement of facts in an action to remove a cloud from title should contain photographs and maps introduced as exhibits, and the appellate court may, where such are not included, decline to review the sufficiency of the evidence to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2911–2914; Dec. Dig. ☞695.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by B. M. Perrow against the San Antonio & Aransas Pass Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Appellant's statement of the nature and result of this suit is as follows:

"This suit was brought by appellant as plaintiff, against appellee, as defendant, in the district court of McLennan county, Tex., to remove cloud from title to a strip of land about 20 feet in width, extending from First street to River street in the city of Waco, Tex.

"The defendant owns the land south of and abutting on the disputed strip, and claims an easement under its deed thereto to have same kept open as a way; also, that said disputed strip is a public alley by dedication and prescription. The fee of the alleged alley and the land on both sides of it was owned by C. R. Burke, deceased, at the time of his death, and came into the possession of his administrator, J. J. Potts, as part of the estate. Potts obtained an order of the probate court of McLennan county to sell the land, and sold to defendant that part of it fronting on First street and adjoining the south line of the alleged alley, and he sold to plaintiff the balance of the land, including the alleged alley. The order of the probate court, approving the sales to plaintiff and defendant, and directing deeds to be executed to them, were both made on the same day, to wit, January 23, 1911, and on the following day the administrator made deeds to the parties.

"In its answer the defendant prayed for judgment establishing its easement and servitude in said property and for general and special relief.

"There was a jury trial and the case submitted by the court to the jury on special issues. The court construed the findings of the jury as adverse to plaintiff and gave judgment against plaintiff and in favor of defendant, establishing an easement and servitude in favor of defendant in the alleged alley with the right to use and have same kept open as a public alley. Plaintiff moved for a new trial, which was overruled; whereupon he perfected his appeal and brings the cause to this court to revise and correct the rulings of the court below."

To this statement, appellee makes the following addition:

"The land upon which the alley in question is located was originally owned by Patrick Burke

and Elizabeth Burke, both deceased, who acquired it in 1885–86, and who are the common source of title. Patrick Burke and Elizabeth Burke had only three children—J. J. Burke, T. W. Burke and C. R. Burke, the latter two of whom are now dead. The appellant and appellee both deraign title through these three sons and their estates.

"Appellee, in addition to pleading that the alley in question was a public highway by prescription and adverse user, also pleaded that appellant was estopped from denying the existence of the alley as a public highway. The case was submitted on special issues. The appellant did not request that any issues be submitted to the jury other than those submitted by the court."

Sleeper, Boynton & Kendall, of Waco, for appellant. R. J. Boyle, of San Antonio, and Neff & Taylor, of Waco, for appellee.

KEY, C. J. (after stating the facts as above). [1, 2] Appellant's first assignment of error complains because the court refused to give the following special charge requested by him:

"The calls in the field notes contained in the probate proceedings and the deed from J. J. Potts, administrator of C. R. Burke, deceased, to defendant, whereby defendant acquired title to the land described in said proceedings and in said deed, do not, by the calls for the south line of the alley and to run with the south line of said alley, pass to defendant any right to, or interest in, such alley."

But one proposition is submitted under that assignment, and it reads as follows:

"The owner of land, with an alley or passageway through it not dedicated to public use, passes no right, easement, or servitude in such alley to a grantee to whom he sells the land adjoining such alley by simply calling for a line of the land conveyed to run northwest a given distance to the south line of the alley and thence southeast with the southeast line of such alley, and especially so, when simultaneously, such grantor conveys to another the balance of the land, including the alley by metes and bounds, without making any reference to such alley, such alley not being a way of necessity for the grantee whose deed embraces no part of the alley; such calls for the alley are merely descriptive and do not amount to a representation that such alley is a public alley or shall be maintained for the use and benefit of the grantee."

That charge was properly refused for more than one reason. In the first place, it assumes that the alley involved in this case had not been dedicated to public use, which assumption is not sustained by the undisputed testimony. On the contrary, appellee submitted testimony sufficient to support a finding that the alley had been dedicated to public use prior to appellee's purchase of land adjacent thereto. In the next place, the latter part of that instruction was upon the weight of testimony, because in considering the case the jury had the right to consider the calls for the alley in appellee's deed as well as all the other testimony in determining whether or not appellant was estopped from denying appellee's right to have the strip of land in question treated as a public alley.

[3, 4] Appellant's brief contains several other assignments of error, all of which pre-

sent, in different forms and from different angles, the contention that the proof failed to show that the strip of land here involved was a public alley, or that appellee had any legal right to the use of it as such alley. The proof shows that the land upon which the alley in question is located was originally owned by Patrick and Elizabeth Burke, both deceased, who acquired it in 1885–86, and who are the common source of title; they left as their heirs three children, namely, J. J. Burke, T. W. Burke, and C. R. Burke, the latter two being now dead. Both parties deraign title through these three sons and their estates. Appellee acquired title to part of the Burke property January 24, 1911, and its deeds thereto call for the alley in question as a boundary line. Contemporaneously with that sale was a sale of the remainder of the Burke property to appellant, whose deeds call for appellee's line and do not refer to the alley. In other words, the fee to the land upon which the alley is located was conveyed to and vested in appellant. But if the strip of land in question was a public alley at that time, or if it was represented so to be in such manner as to constitute an estoppel against appellant, appellee was entitled to recover.

In response to special issues the jury found the following facts: That the alley begins at First street and ends at River street, and is 20 feet in width; that the grantors who conveyed lands adjacent to the alley to appellee knew for what use or purpose appellee was purchasing the property; that they knew at the time that said alley had been used by the public for 20 years or more, and that such use had been open, adverse, and continuous by the public generally; that the owners of the property upon which the alley is situated who sold part of it to appellant and part of it to appellee at the same time, knew of its use as aforesaid by the public as an alley, and intended that it should remain a public alley; that in leaving such alley open it was the purpose of the owner of the land to afford ingress and egress both for himself and his tenants and for the use of the public; and that such alley had been in use for over 20 years. There were some other findings of fact which we deem it unnecessary to set out. They do not conflict with, but tend to support, the above finding.

Appellant submitted much testimony tending to show that the strip of land in question had never become a public alley, but the appellee submitted testimony to the contrary, and which supports all the findings of the jury. And, if the facts found by the jury were not sufficient to support the judgment rendered for appellee, nevertheless it should not be reversed if there was testimony authorizing the court to make such additional findings as were necessary to support the judgment. The court in its decree found that appellee has an easement and servitude

in the alley, and appellee submitted testimony which will support that finding upon two theories, which are: First, that such easement had been acquired by over 20 years' use of the property as a passway and alley by the public; and, second, that as against the rights of appellee, appellant is estopped from denying that the property in question is a public alley. In support of these propositions, we copy the following correct statement from appellee's brief:

"The appellee pleaded in part as follows: That it is true the defendant railway company declined to purchase all of said property, because of the fact that there was a public alley 20 feet wide extending from First street to River street through said property; and because same had been dedicated to public use and used by the general public as a highway; because same had been used continuously by the public for more than twenty years; and because said property had prior thereto been sold with reference and respect to said alley; and because said alley had been established as a public highway by general dedication and by public use and by implication, and same was in all purposes a legally established alley. And, with this understanding, the said administrator and the several grantors of the defendant and the plaintiff deeded the property to the San Antonio & Aransas Pass Railway Company, as hereinafter described, and by their several deeds recognized said alley as a public highway; and that a map showing said alley was made a part of said deeds; and that said purchase was made with respect to said alley, as shown by said map, all of which was known by plaintiff, and said administrator recognized said alley. That the map showed said alley as it existed, and that same was made a part of the deeds of the respective grantors to this defendant, and that said administrator and all grantors signed and acknowledged the deed to this defendant with said map and plot being part thereof, and thereby recognized the existence of said alley as a public highway and sold said property, recognizing the same as a public highway and alley, and that as a matter of law, as well as of fact, this defendant became the owner of said alley adjoining the defendant's property to the center of said alley in fee simple, and became the owner of an easement and servitude in said alley.

"It is undisputed in the record, and there is no contention to the contrary, that both appellant and appellee deraign title to the property owned by them respectively abutting on opposite sides of the alley in question through J. J. Burke, individually, Mary Burke (wife of T. W. Burke, deceased) as guardian, and J. J. Potts, administrator of the estate of C. R. Burke, deceased, the heirs at law and devisees of Patrick and Elizabeth Burke, husband and wife, and the mother and father of the said J. J. Burke, T. W. Burke, and C. R. Burke. Patrick and Elizabeth Burke acquired this property upon which the alley in question is laid out in 1885 or 1886. The houses on each side of the alley were there at that time and were probably 10 or 15 years old.

"Wm. Smith testified: 'I came to Waco when I was ten years old. That was about 34 years that I have been here. * * * That alley was there when I first came to Waco. I remember seeing it there. It has been about 34 years. It has been there ever since that time. I lived on that alley six years. I live there now. The alley extended from First to River streets. That alley is used by the public who want to go in and out there. That is the only way we can go through there, going up through Burke's quarters, and going up River street. The alley has always been so people could go through it.'

"The testimony showing the intention to dedicate said alley by virtue of the deeds is so voluminous that we cannot insert same without extending this brief an unreasonable length.

"J. J. Potts testified in part as follows: 'When I negotiated the sale of this land, I knew that there was an alley (meaning the alley in question) immediately north of, and adjoining, the land to be sold to the railroad company, and this fact was acknowledged by me to Chamberlain (the agent representing the appellee in the purchase of the property) and discussed by us. I endeavored to sell the railroad company all of the land belonging to the Burke estate, but Chamberlain refused to contract for any portion of it except that lying south of the alley, and he believing that the alley had been there so long that it had become a public passageway by prescription, which I acknowledged to be correct. * * * I executed deed as temporary administrator, conveying this land to the railway company, to which was attached blueprint showing the location of the alley, and of the property purchased, and which blueprint was made a part of the deed. I have always known this to be a public alley, and have known this for over 20 years; in fact this alley in years gone by was known as "Burke's alley," and was notorious for the character of negroes living on the alley. * * * When I sold the land to the railroad company, it was agreed that I was to be allowed to remove the negro houses located there and place them on the south side of and facing the alley. When I negotiated the sale to Perrow, it was understood that he was to acquire the houses situated on the land sold to the railway company and move them to points on the alley on land sold to him, and there was no question in the minds of either of us but what the alley in question was a public passageway, and was to be allowed to remain so as to give means of ingress and egress to the houses belonging to said Perrow, and situated upon and facing the alley on both sides.'

"G. E. Chamberlain testified in part as follows: 'The book I hold in my hand is the city directory of the city of Waco for the year 1913. A part of this directory shows the streets and alleys of the city of Waco. It shows there an alley known as "Alabama Place." * * * Alabama Place from 269 River street, west to South First street, with the following house numbers: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19. When I first began negotiations for the purchase of the Burke property, we were offered the privilege of purchasing all of the property belonging to the Burkes; that is, all that Mr. Potts had in charge. We really wanted to buy it all. The reason we did not purchase all or both pieces was on account of the public alley running between the land, through the property from First street to River street. * * * We discussed the matter of the public alley. * * * I told Mr. Potts that there was an alley there, and he agreed with me, and I took the matter up with Mr. Baker—Mr. Waller Baker, our attorney—and he advised me in his opinion that that was a public alley. * * * The purpose of putting that blueprint, or attaching the blueprint to the deed, was to show the location of the property and streets and alleys binding the property; and the blueprint was attached to the deed to show the location of the property and the streets and alleys.'

"The testimony of Willie Smith was in part as follows: 'That alley was there when I first came to Waco. * * * That was about 34 years ago. * * * It has been there ever since then. I lived on that alley six years. The alley extends from First street to River street.'

"S. H. Clayton testified in part as follows: 'The first time I ever saw the passageway was in 1896. It ran from First street to River street, and commenced there at Burke's saloon.'

"J. W. Brightwell testified as follows: 'I

knew at that time (1891) that there was an alley running from River street to First street (meaning the alley in question). * * * In going down First street you would turn into the alley right around the saloon, just as you pass the saloon and turn. That alley laid from that point through to the river. There were houses on both sides of River street as you went back towards the back end. My recollection before we got to River street there were some houses. There was a vacant lot on the left fronting on River street, but on the right there were houses clear back to River street. That alley at that time was opened to use generally by the public, and everybody that wanted to use it. It was known by all of us as "Burke's quarters."'

"J. J. Burke testified in part as follows: "There were houses on both sides of the alley when he bought it. He (meaning his father) first bought south, and then he bought north. The deed to Patrick Burke was dated April 27, 1886. * * * As to whether these houses had been 35 or 40 years, I do not know. I think they were 10 or 15 years old when he bought them. I do not know.'

"Lee Davis testified in part as follows: 'I lived in McLennan county, Tex., all my life. I am now tax collector. * * * I know the location of what is known as Burke's alley. As to when I first knew that alley as a highway I am not positive. I was there in 1894. * * * During the time I was connected with the sheriff's office, and since that time, I have known Burke's alley. In the nineties I knew it as an alley. It was open, and I used to travel through there. It was used by the public generally. I have a picture in my hand that seems to be a picture of that alley.'

"We could add at great length much more testimony that was introduced showing the long use of this alley, and that it was used by the public generally, also showing that the Burkes lived on the property, and knew of its use; but we deem any further statement of the evidence unnecessary at this time."

[5] In concluding this opinion, and as this is not the first instance in which the same defect has occurred, we deem it proper to advert to the fact that appellant has not brought up a complete statement of facts. From that instrument we copy as follows:

Page 117: "Exhibit No. 9. A large sketch or map of property in question."
Page 124: "Exhibit No. 15. Photograph of the alley or passway in controversy, located between First and River streets, showing present location of houses, fence, and condition of alley or passway."
Page 132: "Exhibit No. 21. Blueprint showing map of property with streets, alleys, and location."

Neither the photograph nor the blueprint maps referred to are contained in or sent up with the statement of facts, and therefore we are not in possession of all of the testimony which was considered by the court and jury in trying this case. J. J. Potts, who acted as administrator of the estate of C. R. Burke in negotiating the sale to appellee, testified, in reference to one of the blueprints referred to, that it was intended not only to contain a description of the property conveyed, but also to show the location of the streets and alleys. One (or both) of these maps may have shown upon its face that it had been recorded, and that the alley in question had been

dedicated to public use. When an appellant seeks to obtain the reversal of a case upon assignments complaining of the action of the court or jury in passing upon testimony, it devolves upon him to present to the appellate court, as well as may be done, all the testimony that was considered in the court below; and, when it is made to appear that this has not been done, perhaps the appellate court would be justified in declining to consider such assignments of error. However, in this case that course has not been pursued, and we have reached the conclusion that, aside from what may have been shown by the maps and photograph referred to, the testimony sustains the findings of the jury and the judgment of the court.

No reversible error has been pointed out, and the judgment is affirmed.

Affirmed.