## HERRON v. HUGHES et al.  (No. 11988.)*

Court of Civil Appeals of Texas. Fort Worth.
Sept. 14, 1928.

Rehearing Denied Nov. 24, 1928.

Taylor, Muse & Taylor, of Wichita Falls, for appellant.

Marshall & King, of Graham, for appellees.

BUCK, J. On and prior to the year 1921, B. Frank Herron and his wife, Mrs. Mary L. Herron, owned four tracts of land in Young county, containing a total of 640 acres. They had two daughters, viz., Mrs. Maud Hughes, wife of John W. Hughes, the defendants herein, and Mrs. Lynnie Willerford, plaintiff herein. She was subsequently divorced from Mr. Willerford, and this suit was brought in the name of Lynnie Herron, by which name the plaintiff will be hereinafter designated. Mr. and Mrs. Herron on July 30, 1921, gave an oil and gas lease on the 640 acres to their son-in-law, John W. Hughes. It is claimed by plaintiff, and admitted by defendants, that this lease was executed without any consideration, and that primarily the leasehold interest vested in lessee constituted a trust for the benefit of Frank Herron and wife, and their creditors. John W. Hughes was at the time of the conveyance the agent for the Magnolia Petroleum Company at Graham and ran a filling station, and was engaged in handling oil and gas leases, and it was thought by the interested parties could more successfully handle the leasing of this land than Mr. Herron could. The Herrons about this time owed some debts; perhaps $5,000 to $6,000 to the Graham National Bank; $800 to John E. Morrison, etc. The creditors were demanding payment. The Herrons were old and unable to raise the money necessary to meet these debts. So it was finally agreed to convey the property, subject to any oil and gas lease formerly conveyed to Hughes or others, to the bank, in payment of the debt to the bank and some other indebtedness, amounting all told to some $7,000. This was done on October 6, 1921. On December 29, 1921, the bank conveyed to Hughes, by a general warranty deed, for a recited consideration of $1,000 cash, and a vendor's lien note, payable to the bank in the sum of $6,000, the land theretofore conveyed by the Herrons to the bank, subject to any valid outstanding oil or gas leases on said land.

Frank Herron died on May 31 or June 1, 1922, leaving his entire estate to his widow, Mrs. Mary L. Herron. Plaintiff subsequently filed suit against her mother, Mrs. Mary L. Herron, and Mr. and Mrs. Hughes, for an interest in the land, but this suit was dismissed; Mrs. Mary L. Herron also filed suit against Mr. and Mrs. Hughes, but Mrs. Herron died before trial, on, to wit, December 29, 1924, and the suit was not further prosecuted by the administrator.

On September 1, 1922, Mrs. Mary L. Herron, as "sole devisee under the will of Benjamin F. Herron, deceased, and as sole executrix under the will of Benjamin F. Herron, and for a recited consideration of $10," executed to John W. Hughes a quitclaim deed to 206.88 acres of this land, described as follows: "All of the A. L. Denton Survey, abstract 88, and said survey contains by a resurvey 206.88 acres of land, as appears by resurvey and plat shown of record in volume 64, page 428, deed records of Young county, Texas, and reference is hereby made to said plat and field notes and the record thereof for a full and complete description of the land herein conveyed.".

On January 10, 1923, a partition deed was executed by and between Mrs. Mary L. Herron, Mrs. Lynnie Willerford, plaintiff herein, joined by her husband, G. W. Willerford, and John W. Hughes and wife, Mrs. Maud Hughes, by the terms of which the mineral rights to the land in question were divided among the parties to said deed. We understand that it is agreed by all parties that by the terms of the deed Mrs. Mary L. Herron received virtually $\frac{2}{5}$ of such mineral rights, and John W. Hughes and wife, Mrs. Maud Hughes, jointly received a $\frac{2}{5}$ of such mineral rights, the plaintiff herein received a $\frac{1}{5}$ of such mineral rights.

Mrs. Mary L. Herron received under this partition deed, covering the mineral rights only, a conveyance of an undivided $\frac{2}{10}$ interest in and to all of the oil, gas, and other

minerals in the 206.88 acres of the A. L. Denton survey; an undivided $^{60}\!/_{249.65}$ interest in and to all the mineral rights in and under the J. Abernathy survey of 240.65 acres; an undivided $\frac{1}{5}$ interest in all the minerals under the P. J. Humphreys survey; an undivided $\frac{2}{5}$ interest of the mineral rights in the F. Herron survey. The plaintiff received an undivided $\frac{1}{10}$ mineral interest in the A. L. Denton survey; an undivided $^{30}\!/_{249.65}$ interest in the J. Abernathy survey; an undivided $\frac{1}{10}$ interest in the P. J. Humphreys survey; an undivided $\frac{1}{5}$ interest in the F. Herron survey. J. W. Hughes and wife, Mrs. Maud Hughes, received by the deed an undivided $\frac{2}{10}$ interest in all the minerals under the A. L. Denton survey; an undivided $^{60}\!/_{249.65}$ interest in all of the J. Abernathy survey; an undivided $\frac{1}{5}$ interest in the P. H. Humphreys survey; an undivided $\frac{2}{5}$ interest in the F. Herron survey.

This partition was signed by Mrs. Lynnie Willerford, joined by her husband, and by Mrs. Mary L. Herron, and by J. W. Hughes and his wife. There was in the deed the following stipulation: "The above and foregoing is intended to be and is a full, complete and final partition and settlement of the estate and interest hereinbefore set out, in and to the property of B. F. Herron, deceased, and his surviving wife, Mary L. Herron, in so far as the same affects the mineral rights."

The contention made by plaintiff was that this stipulation was not in the deed when she signed it or when her mother signed it. In answer to question 1, the jury found that the stipulation was on the deed when Mrs. Mary L. Herron signed it, but was not therein at the time Mrs. Lynnie Herron, plaintiff, signed and acknowledged it.

On the same day the quitclaim deed was executed by Mrs. Mary L. Herron to John W. Hughes, she also executed a "ratification of oil and gas lease" on 160 acres of land more or less out of the A. L. Denton survey, by the terms of which instrument the grantor "ratified and confirmed said oil and gas lease theretofore made by her and her deceased husband."

On August 25, 1926, plaintiff, as a feme sole, filed her original petition herein. The petition is quite lengthy, consisting, with attached exhibits, of some 30 pages of closely typewritten matter. Plaintiff pleads and sets out the deed to the Graham National Bank, by her father and mother, the deed by the bank to John W. Hughes, the quitclaim deed and the so-called ratification deed by Mrs. Mary L. Herron to John W. Hughes, the partition deed executed by Mrs. Mary L. Herron, plaintiff, and Mr. and Mrs. Hughes, but alleges that all of the instruments were executed by Mrs. Mary L. Herron upon the promise and agreement made by John W. Hughes, and the reliance thereon by Mrs. Herron, that such conveyances were made for the sole purpose of convenience and in order to enable Hughes to handle the leases more profitably and expeditiously, and that the Herrons were not finally disposing of their interests in any part of the estate by reason of such instruments so executed, but that Hughes, as said trustee, agreed that the Herrons should receive all the residue of the estate, after the debts and the necessary expenses incurred in the management of the estate had been paid; that originally Frank Herron and his wife, and after his death Mrs. Herron, relied on such promises and agreements, and but for such reliance would not have executed said instruments or any of them. Plaintiff prayed for an accounting, under oath, a full and complete inventory and statement by said defendant Hughes, and that all of the instruments affecting the title to said land be canceled, and that the court decree that all of said land and the mineral rights thereto be held to be owned by plaintiff and the defendant Mrs. Maud Hughes.

Defendants John W. Hughes and wife, Mrs. Maud Hughes, answered by a general demurrer, a general denial, and a plea of not guilty. They specially pleaded that the deed from the Herrons to the bank was a warranty deed, without any condition or agreement, and so understood and believed by defendant John W. Hughes when he purchased the land from the bank. They further pleaded ratification of the original deed by the Herrons and the lease to defendant Hughes; that all matters of controversy had been settled and determined by the partition deed, heretofore mentioned; a plea of estoppel; a plea of accord and satisfaction; and other pleas of defense, including a plea of limitation of the two and four years' statutes of limitation, and a plea of the statute of frauds.

On September 15, 1927, the cause was submitted on special issues, which, with the answers thereto, are hereinafter set out:

"Issue No. 1: Did the partition agreement dated January 10, 1923, at the time same was signed and acknowledged by Mrs. Mary L. Herron, have attached thereto the paragraph reading as follows: 'The above and foregoing is intended to be and is a full, complete and final partition and settlement of the estate and interest hereinbefore set out, in and to the estate of B. F. Herron, deceased, and his surviving wife, Mary L. Herron, in so far as the same covers and affects the mineral rights'? Answer: Yes.

"Issue No. 2: On and prior to January 10, 1923, did the defendant, John W. Hughes, agree with Mrs. Mary L. Herron that he would later transfer to Mrs. Mary L. Herron any further mineral interest in the property in dispute, over and above the interest conveyed by such partition agreement? Answer: No.

"If you have answered issue No. 2 'No,' then do not answer this issue, but if you have answered issue No. 2 'Yes,' then answer: Did Mrs. Mary L. Herron believe and rely on such promise at the time she executed such partition agreement? Answer: ———.

"Issue No. 3–A: Did the partition agreement dated January 10, 1923, at the time same was signed and acknowledged by the plaintiff, Lynnie Herron, have attached thereto the paragraph reading as follows: 'The above and foregoing is intended to be and is a full, complete and final partition and settlement of the estate and interest hereinbefore set out, in and to the estate of B. F. Herron, deceased, and his surviving wife, Mary L. Herron, in so far as the same covers and affects the mineral rights'? Answer: No.

"Issue No. 3–B: On and prior to January 10, 1923, did the defendant, John W. Hughes, agree with the plaintiff Lynnie Herron, that he would later transfer to Lynnie Herron any further interest in the property in dispute, over and above the interest conveyed by such partition agreement? Answer: Yes.

"Issue No. 3–C: If you have answered issue No. 3–B 'No,' then do not answer this issue, but if you have answered issue No. 3–B 'Yes,' then answer: Did the plaintiff, Lynnie Herron, believe and rely on such promise at the time she executed such partition agreement? Answer: Yes.

"Issue No. 4: Did the check dated February 19, 1924, from John W. Hughes to Mrs. Mary L. Herron, at the time same was accepted and indorsed by Mrs. Mary L. Herron, have penned notation on the face thereof the following: 'For settlement in full as per contract as of January 10, 1923'? Answer: Yes.

"Issue No. 4–A: If you have answered issue No. 4 'No,' you need not answer the following question, but if you have answered the same 'Yes,' then answer whether said check was accepted by Mrs. Mary L. Herron believing and relying upon the statement of J. W. Hughes made at the time of the execution and delivery of the partition agreement that he would later transfer to Mrs. Mary L. Herron and the plaintiff any further interest in the minerals in the property in dispute? Answer: Yes.

"Issue No. 5: Did the check dated February 7, 1924, made by John W. Hughes to plaintiff, Miss Lynnie Willerford, at the time said check was accepted and indorsed have typewritten on the face thereof the following notation: 'In full and complete settlement of partition agreement made on the F. Herron lands on or about January 10, 1923, which partition is accepted and ratified'? Answer: Yes.

"Issue No. 5–A: If you have answered issue No. 5 'No,' you need not answer the following question, but if you have answered the same 'Yes,' then answer whether said check was accepted by Mrs. Lynnie Willerford believing and relying upon the statement of J. W. Hughes made at the time of the execution and delivery of the partition agreement that he would later transfer to Mrs. Mary L. Herron and the plaintiff any further interest in the minerals in dispute? Answer: Yes.

"Issue No. 6: On October 6, 1921, was Frank Herron mentally incapacitated and unable to understand the effect of the warranty deed executed by him to the Graham National Bank? Answer: No.

"Issue No. 7: On October 6, 1921, was Mrs. Mary L. Herron mentally incapacitated and unable to understand the effect of the warranty deed executed by her to the Graham National Bank? Answer: No.

"Issue No. 8: On September 1, 1922, was Mrs. Mary L. Herron mentally incapacitated and unable to understand the effect of the partition agreement executed by her on said date? Answer: No.

"Issue No. 9: On January 10, 1923, was Mrs. Mary L. Herron mentally incapacitated and unable to understand the effect of the partition agreement executed by her on said date? Answer: No.

"Issue No. 10: On December 14, 1923, was Mrs. Mary L. Herron mentally incapacitated and unable to understand the effect of the ratification deed executed by her on said date? Answer: No.

Issue No. 11: On March 21, 1924, was Mrs. Mary L. Herron mentally incapacitated and unable to understand the effect of the answer filed by her in cause No. 7330–B pending in the District Court? Answer: No.

"Issue No. 11–A: Did J. W. Hughes induce F. Herron and wife to execute and deliver the deed to the Graham National Bank on the representations that said deed would be held by said bank in trust for and on the payment of the same, that said property, or the remainder thereof would be re-conveyed to the same Herron and wife? Answer: ———.

"Issue No. 12: Was the deed from F. Herron and wife to the Graham National Bank executed and delivered by the said F. Herron and wife with the agreement that the property conveyed in said deed was to be held in trust by said bank for the payment of the indebtedness of the said Herron and wife, and on the payment of same that said property or so much thereof as remained after the payment of said debt, would be returned to the said Herron and wife? Answer: No.

"Issue No. 13: If you answer issue No. 12 'No,' then do not answer this issue, but if you answer issue No. 12 'Yes,' then answer: Did F. Herron and wife rely upon such agreement in executing such deed? Answer: ———.

"Issue No. 14: Did J. W. Hughes accept the deed to the property in question from the Graham National Bank with knowledge of the agreement, if any, that the deed to said property was executed and delivered to said

bank to be held by said bank in trust until the indebtedness of the said Herron and wife was paid, at which time said property or the remainder thereof, was to be returned to the said Herron and wife? Answer: Yes.

"Issue No. 15: Did Mary L. Herron sign the ratification deed upon the representations of J. W. Hughes that it was necessary for the said Hughes to have the same in order to dispose of the oil and gas rights in and under said land? Answer: Yes.

"Issue No. 16: · If you have answered issue No. 15, 'No,' then do not answer this, but if you have answered issue No. 15 'Yes,' then answer this: Did Mrs. Mary L. Herron believe and rely upon such representations in making such ratification deed? Answer: Yes.

"Issue No. 17: What was the net amount of money received by J. W. Hughes or J. W. Hughes and wife from the land in question from any and all sources between December 29, 1921, to January 10, 1923, over and above the indebtedness of F. Herron and wife paid by the said J W. Hughes, and over and above money furnished to Mrs. Mary L. Herron and to the plaintiff by the said J. W. Hughes or by the said J. W. Hughes and wife? Answer in dollars and cents. Answer: $45,127.41."

Defendants asked for peremptory instructions, which were refused. Upon the verdict so found, plaintiff and defendants each asked for judgment. The prayer of defendants was granted, and judgment was entered for defendants. Plaintiff has appealed.

### Opinion.

■ As it is admitted by appellant, and the facts show, that one half of the surface rights to the land in question has already been conveyed to plaintiff, the other half to Mrs. Hughes, plaintiff shows no cause of action except as to one-half of the mineral rights, and for an accounting. As appellee admits that the conveyance by Frank Herron and Mary L. Herron of the leasehold rights to defendant Hughes was without consideration, and merely for the purpose of vesting title in Hughes in order that he might more readily convey title to any leasehold interest in the same to any prospective purchasers, unless plaintiff is precluded from recovery herein by reason of some one or more of the defenses pleaded by defendants below, then plaintiff is entitled to have an accounting of the proceeds of any royalties and leasehold interest sold to other parties, and to recover one-half of such proceeds, less one-half of the reasonable and necessary expenses incurred, and less any amounts paid out by said Hughes either to or on behalf of the Herrons. Defendant Hughes did not plead that he was entitled to any compensation for managing and handling the property, nor did he request the submission of that issue, and therefore, under the present state of the record, he is not entitled to the same; he having waived such item of recovery. Ormsby v. Ratcliffe, 1 S. W.(2d) 1084, by the Supreme Court.

At the date of the partition deed, plaintiff had no interest in the mineral rights either from her father, who had willed all of his estate to his wife, or from her mother, who was then living. Therefore, as to this alleged ground of action, plaintiff failed in her proof, irrespective of the answer to issue No. 3–A that the stipulation was not attached to the deed at the time plaintiff signed and acknowledged it, and irrespective of the answer to issue No. 3–B that Hughes agreed with plaintiff, prior to January 10, 1923, that he would later· transfer to plaintiff any further interest in the property in dispute, over and above the interest conveyed by such partition agreement, unless plaintiff's claim be founded upon the theory that she was entitled to one-half of such interest as was held by Mrs. Mary L. Herron, her mother, at the time of her death. Mrs. Herron did not leave any will. Plaintiff at the time of this deed owned no interest either in the surface rights or in the mineral rights. Moreover, by the terms of the agreement found by the jury to have been made by Hughes to plaintiff, reference might have been had to the surface rights which plaintiff subsequently received.

■ Answers to issues Nos. 4 and 4–A, to the effect that a check dated February 19, 1924, had a penned notation on it as follows: "For settlement in full as per contract as of January 10, 1923," and that Mrs. Herron accepted said check "believing and relying upon the statement of J. W. Hughes made at the time of the execution and delivery of the partition agreement that he would later transfer to Mrs. Mary L. Herron and the plaintiff and (any) further interest in the minerals in the property in dispute," are in conflict with the answer to issue No. 2. In view of these two conflicting answers, in our opinion the trial court erred in rendering a judgment for defendants, which judgment must have been based, in part at least, upon the answer to No. 2. This conflict in the jury's findings was called to the attention of the court in the motion for new trial, but even if it had not been, it has been held that a judgment rendered on such conflicting answers of the jury constitutes fundamental error. Kahn v. Cole et ux. (Tex. Civ. App.) 227 S. W. 556; S. A. & A. P. Ry. Co. v. Bowles (Tex. Civ. App.) 30 S. W. 89; S. A. & A. P. Ry. Co. v. Williamson (Tex. Civ. App.) 247 S. W. 1098; Puckett v. Davis (Tex. Civ. App.) 238 S. W. 367; Hair v. Wichita Valley R. Co. (Tex. Civ. App.) 274 S. W. 247.

· But we are of the opinion that the judgment below should be reversed and here rendered on the undisputed facts and the findings of the jury. By the terms of the ratification deed signed by Mrs. Mary L. Herron to John W. Hughes, on, to wit, December 14, 1923, Mrs. Herron confirmed and ratified the partition deed theretofore made by her and

Mrs. Lynnie Herron; and J. W. Hughes and wife. There is this provision in the deed: "And I hereby ratify and confirm all of the actions of John W. Hughes in the settlement of the debts of F. Herron deceased, and recognize said service as a consideration of all value received by him under said above mentioned deed and mineral partition." By the partition deed Mrs. Herron received certain designated undivided portions of the mineral rights in the land formerly owned by her and her deceased husband and Mrs. Lynnie Herron received certain designated mineral rights in the four tracts formerly owned by her father and mother, and Mr. and Mrs. J. W. Hughes received certain designated portions of the mineral rights in said land.

In answer to issue No. 17, to wit, "What was the net amount of money received by J. W. Hughes or J. W. Hughes and wife from the land in question from any and all sources between December 29, 1921, to January 10, 1923, over and above the indebtedness of F. Herron and wife paid by the said J. W. Hughes, and over and above money furnished to Mrs. Mary L. Herron and to the plaintiff by the said J. W. Hughes or by the said J. W. Hughes and wife?" The jury found that $45,127.41 had been received. Upon Mrs. Mary L. Herron's death, leaving no will, her two children, to wit, plaintiff and Mrs. Hughes, each was entitled to a one-half interest in their mother's estate. The only interest not yet determined is the mineral interest in the four tracts awarded to Mrs. Mary L. Herron under the partition deed, the plaintiff and Mrs. Hughes being entitled each to one-half of said estate. Therefore, we reverse the judgment below, and here decree and award to plaintiff the mineral interest conveyed to her by the partition deed, in addition to one-half of the mineral interest mentioned in said partition deed and conveyed therein to her mother. It is decreed that Mrs. Hughes, in addition to the mineral rights received under the partition deed, by her and her husband, be decreed one-half of the mineral rights conveyed to her mother in said partition deed.

As to the $45,127.41 found by the jury to be the net amount of money received by J. W. Hughes or J. W. Hughes and wife from the land in question from any and all sources between December 29, 1921, and January 10, 1923, we think that plaintiff is entitled to recover thereof ⅖ of said amount, ⅕ by reason of her mineral rights under the partition deed and ⅕ by reason of her interest in the mineral rights received from her mother's estate by inheritance. It is true that it is not definitely shown in the record that by reason of the partition Mrs. Mary L. Herron received a ⅖ interest in the mineral rights and plaintiff a ⅕ interest in said mineral rights and Mr. and Mrs. Hughes a ⅖ interest, but the parties and counsel to this suit seem to recognize the fact that such was the intent of the partition made. It is therefore decreed that Mrs. Lynnie Herron is entitled to $18,050.96 with interest at 6 per cent. from January 10, 1923, and that she recover said amount. It is left undetermined as to any interest in the royalties and revenues from the mineral rights which may have been collected and received by J. W. Hughes since January 10, 1923. If deemed advisable, plaintiff can file a separate suit for such interest, if any.

Judgment reversed and here rendered.