## NORTHERN TEXAS TRACTION CO. v. WHITE et, ux. (No. 12147.)

Court of Civil Appeals of Texas. Fort Worth. June 15, 1929.

Rehearing Denied July 20, 1929.

Cantey, Hanger & McMahan, W. D. Smith, E. A. McCord, and Warren Scarborough, all of Fort Worth, for appellant.

Houtchens & Clark, of Fort Worth, for appellees.

DUNKLIN, J. A collision occurred at the intersection of Lipscomb and Bowie streets in the city of Fort Worth between an automobile driven by Will T. White while traveling south on Lipscomb street and a street car belonging to the Northern Texas Traction Company while traveling east on Bowie street. As a result of that collision, the automobile was damaged, and the street car was knocked off its tracks, and the wife of Will T. White, who was riding with him in the automobile, sustained personal injuries.

This suit was instituted by Will T. White against the traction company to recover for the damage done to his automobile and also damages for the personal injuries sustained by his wife, Mrs. Mary Etta White.

On a trial before a jury plaintiff recovered a judgment in the sum of $350 as damages to the automobile, and in the sum of $3,000 as damages for the personal injuries sustained by his wife, and from that judgment the defendant traction company has prosecuted this appeal.

Some 36 special issues were submitted to the jury and findings made thereon, among which the jury found that, at the time and immediately prior to the accident the motorman in charge of the street car failed to exercise ordinary care to keep a lookout for plaintiff's automobile. Also that the motorman was guilty of negligence in failing to sound a gong or ring a bell on approaching the intersection of the two streets; also that he was guilty of negligence in failing to slow down his street car as he approached the intersection of the two streets; also that he was guilty of negligence in failing to yield to the plaintiff the right of way at said street intersection.

The jury further found that each of those acts of negligence so found was the proximate cause of the collision and its resulting damages to plaintiff's automobile and the injuries to his wife. All of those issues of negligence were duly alleged in plaintiff's petition and assigned as the proximate cause of the injuries complained of.

The jury further found that as the street car approached the crossing in controversy it was not running at a speed in excess of 20 miles an hour, as alleged by plaintiff. They further found that as the street car approached the point of the collision the motorman in charge of the street car did not discover that plaintiff and his wife and the automobile in which they were riding were in danger of being collided with by the street car. The affirmative of those issues was also alleged in plaintiff's petition, with the further allegation that each constituted negligence on the part of defendant, which was the proximate cause of the collision.

The issues of contributory negligence on the part of plaintiff and his wife, which were tendered in defendant's special answer, were likewise submitted to the jury, who made findings thereon as follows: (1) That the automobile in which plaintiffs were riding on the occasion in question reached the intersection of the two streets mentioned above prior to or at the same time the street car reached that point; (2) that, as the plaintiff's automobile approached the place of the collision, they failed to keep a proper lookout for

impending danger of the collision between the automobile in which they were riding and any street car that might be operated at the intersection of those two streets; (3) that such failure on the part of the plaintiffs to keep a proper lookout at that time was negligence; (4) but that such negligence on their part was neither a proximate cause nor a proximately contributing cause of the collision; (5) at the time and immediately prior to the collision plaintiff's automobile was being operated at a speed of between 15 and 20 miles an hour; (6) but that plaintiff's act in operating the automobile at that speed was not negligence; (7) that neither of the plaintiffs failed to listen for the approach of the street car at the time they approached the street crossing; (8) that the plaintiff's automobile was damaged in the sum of $350; (9) that, as a result of the collision, plaintiff's wife, Mrs. Mary Etta White, sustained personal injuries, a reasonable compensation for which would be $3,000; (10) that as the automobile approached the street crossing plaintiff had the same under such control as an ordinarily prudent person would have exercised under the same circumstances; (11) that plaintiff did not drive his automobile into the north side of the street car as alleged by the defendant; (12) that neither the plaintiff Will T. White nor his wife was guilty of negligence in failing to see the street car prior to the collision in question; (13) that both plaintiff Will T. White and his wife exercised ordinary care in the way and manner they aproached the street crossing upon the occasion of the accident.

The findings of the jury No. 2 above, to the effect that as the automobile approached the place of the collision plaintiff failed to keep a proper lookout for a street car that might be approaching the crossing, and that their failure to keep such a lookout was negligence, were in direct conflict with, and contradictory of, the further finding No. 12, above, to the effect that the failure of plaintiff Will T. White and his wife to see the street car as it approached the point of the collision was not negligence, and finding No. 13 that plaintiff exercised ordinary care in the manner they approached the crossing. There was a further conflict between the finding that the negligence of the street car conductor in failing to keep a proper lookout for vehicles as he approached the crossing was a proximately contributing cause of the accident and the further finding that plaintiffs' negligence in failing to perform the same act did not contribute to the accident.

By reason of such conflict in the findings of the jury, there was reversible error in the refusal of the trial court to set aside the verdict and grant a new trial, independently of all other assignments of error presented in this record.

The statute requires the judgment to fol-low the verdict, and that cannot be done if the findings upon which the judgment is to be based show irreconcilable conflict. It follows, therefore, that a judgment rendered on such conflict is fundamentally erroneous. See Herron v. Hughes' (Tex. Civ. App.) 11 S.W.(2d) 567; S. A. & A. P. Ry. Co. v. Williamson (Tex. Civ. App.) 247 S. W. 1098; McDonald v. Simons (Tex. Com. App.) 280 S. W. 571; Beasley v. Keck (Tex. Civ. App.) 280 S. W. 855.

Moreover, we are of the opinion that the court erred in failing to instruct the jury to find that plaintiffs were guilty of negligence proximately contributing to the accident, since the proof showed without controversy that, as the automobile approached the intersection of the two streets, it was traveling at a rate of speed sufficiently great to knock the street car off the track when the collision occurred, which the jury found to be a speed between 15 and 20 miles an hour, and which some of the disinterested witnesses testified was more than 40 miles an hour. And, according to the testimony of plaintiff Will T. White, the driver of the automobile, he failed to sound the horn of his machine or to stop it or check its speed before he reached the street car track, and neither of the plaintiffs took any precaution to ascertain whether or not a street car was approaching the crossing, although they could have seen it in ample time to have avoided the collision had they looked; nor did either of them give any excuse for such failure. The accident occurred about 3 o'clock in the afternoon, while the sun was shining, and both plaintiffs were perfectly familiar with the crossing from daily use thereof, and knew that a street car might be expected to pass the crossing on Bowie street at any time during the day. In other words, the testimony of plaintiffs themselves shows conclusively as a matter of law that they exercised no care whatsoever to avoid the known danger of passing the crossing without looking to see whether or not a street car was approaching, and offered no excuse for failure to so do; and from their own testimony no other conclusion can be reached than that they themselves were guilty of negligence which proximately contributed to the collision.

Plaintiff Will T. White testified in part as follows:

"I was driving at the time along Lipscomb Street, and I knew that the street car track was laid on Bowie Street, on that cross street. I used that street all of the time in driving out to my place. I had driven over it for five years, I guess; I made an average of going over it twice a day. I knew that street cars passed that intersection there every few minutes, sometimes going east and sometimes going west. * * *

"I had gotten on the street car track before the collision took place. I had just got-

ten about middle ways of the track with the front wheels; the front wheels of my automobile were about middle ways of the track, middle ways between the two rails. * * *

"I never saw the street car until the collision took place. The accident took place in the day time, broad open day time. That is a great big, broad street intersection there.

"Q. And there is a vacant lot on the right hand side, as you come up to Bowie Street, and the street car track, isn't there? A. The hedge is on the west, running east and west there, a little hedge on the north side. I do not mean to tell the jury that the hedge kept me from seeing the street car. The hedge was not tall enough. As to why I mentioned the hedge I wanted to explain it to you like it was. The hedge was not tall enough to keep me from seeing the street car. The hedge was about waist high. If I were sitting in an automobile I would be clear up above the hedge. You could not, however, look over that hedge when you were 100 feet north of the street car track; you could not look to your right and see a street car coming a block away, you couldn't do that, because there is some shrubs between you, and they are above there. * * * You would have to be half-way of the vacant lot, before you could see the street car, and you can see it when it is up there for half a block. If I had looked when I was half-way down that vacant lot, when I was still 30 or 40 feet north of the track, under my own statement, I could have seen the street car coming half a block away, sure, I could have, over half a block away. * * *

"I never heard it until I heard the roar and it struck the automobile. I did say a moment ago that I did not see the street car until it struck me. I sure did say that, and I say it again, that I did not see it. I heard the roar of it first. * * *

"I was driving along the street there with my wife in the automobile and she and I were talking like a man and a wife would, I guess, and we were talking as we came towards the car track. * * *

"When the accident occurred and the collision took place, whether I ran into the side of the car, as you say, or whether the front end of the street car hit me in the side, as I say, I was still driving sixteen miles an hour. I was driving right along, just like I had been, when the street car struck me, and when he drug me down the street.

"Q. You had not slowed up as you approached? A. I didn't have any time to slow up.

"Q. You didn't slow up any? A. No, sir, I didn't have no time to slow up. I was going about the same rate of speed all along that block most all of the time, I guess. * * * As I came up to the intersection of those streets I had a horn on my automobile. I have got a horn on it. I did not sound my horn as I approached the street car track.

I never had time to sound any. I didn't have any time to.

"Yes, I had brakes on my car, good ones. I had two wheel brakes. They were in good condition. I did not put my brakes on before I had the collision. I never had time to put on any brakes. * * * I was not excited before I got struck, but I was after I got struck. I did not know that there was any street car there until I got struck. I did not have nothing to be excited about.

"Q. You were just driving along there with a street car right by you and you didn't know that there was a street car in a mile of you, did you? A. Oh, yes, I did. I knew there was one on that line. There always is. Do you think a man would cross that thing three hundred and sixty-five times a year, twice a day, for five years, and would not know there was a street car there. They ought to know there was one there. * * *

"At the rate of speed that I was going there, with my good brakes on that car, as I have described, if I had seen the street car when I was in ten or fifteen feet of the track, I could have stopped, certainly."

Plaintiff Mrs. Mary Etta White testified in part as follows:

"I was sitting on the right hand side of the automobile. I stated that I did not know how to drive an automobile. I never did attempt to drive one. I left the driving entirely to Mr. White. I always do. I did on this occasion. I acquiesced in Mr. White's manner of driving the automobile, whatever it was, up to the place where the accident happened. I do not know how to drive, and, of course, I tried to take no part in the driving. Mr. White was my husband and was in charge of the car, and I did not undertake to have anything to do with the driving of the car in any way.

"Mr. White and I were going home on that occasion. We had been up town to do some shopping, and we had gotten in the car to go home. I looked to the west as I came up to the street car track. I could not tell you how far from the street car track I was when I looked to the west. I was several feet away, but I could not be positive as to how many feet, and I am not going to tell a story about it. I guess it was about fifteen feet, if I was guessing at all. As near as I can estimate it, I was about fifteen feet from the track when I looked to the west. There was nothing between me at that time and the open street, nothing that I seen. When I was fifteen feet from the track, I do not think that we had already come out into the intersection of Lipscomb Street and Bowie Street; I don't think so—I know not. We were not about the corner of the intersection; we were not that far. I couldn't tell you whether Bowie Street is about thirty feet wide, or thirty-five or thirty-six. I couldn't tell you that. * * *

"If I had seen the street car coming there

on my right a few feet away and had called Mr. White's attention to it, and had told him that there was a street car and had asked him to slow down the speed of the automobile, Mr. White would have done it. * * *

"I did not say that after I looked to the right that the collision took place in just a second after that. I did not say that; you never understood me to say that. I never said we were even five feet away when that happened. I could not tell you how long it was after I looked before the accident happened. I could not be positive how long it was, but it wasn't long. It was more than a second, but how much more than a second, I cannot answer, because that is one question I don't know.

"Mr. White did not sound any gong as he approached that street car track there, and he did not change the rate of his speed any, but just kept right on at the same rate of speed. He got on the track before the collision took place.

"Q. And you didn't see the street car there before the collision took place? A. Well, I just seen it as it struck. Just as we struck the street car, I saw it. I had not seen it before that time. I am one of those unfortunate folks that have to wear glasses, but when I have got glasses on, I can see fine. I had my glasses on the afternoon of the accident.

"Q. So there was nothing to keep you from )eing able to see that afternoon, was there? A. Nothing but the sun to blind me. Q. Well, the sun; do you claim that the sun blinded you? A. Well, I said there was nothing but the sun.

"Q. Do you think that the sun is what kept you from seeing that street car? A. I didn't say it was.

"Q. I know you didn't, but I am asking you now if you think it was? A. I didn't say it was the sun, but I said that was all, now."

In the leading case of I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, a judgment in favor of Edwards against the railway company for damages was reversed, and judgment was rendered denying plaintiff any recovery, by reason of the conclusion reached by the Supreme Court that plaintiff himself was guilty of negligence proximately contributing to his injury. The accident occurred at a crossing of a public county road over which plaintiff was traveling. We quote the following from the opinion in that case:

"The evidence, without contradiction, shows that the plaintiff walked along the road at night, approaching the railroad obliquely, with his side towards it, until he came near the crossing when he turned with the road across the track, and was struck as he reached the center thereof. The train was visible by its electric headlight upon a straight track for a mile or more before it reached the crossing and the noise of its motion was plainly audible. Plaintiff admits that, before stepping on the track, he neither looked, nor listened for the train, although he was familiar with the crossing, and knew of the frequent passing of trains; and that he could have seen and heard it, had he done so. All of the other evidence is to the same effect. He relies alone upon the fact, which the evidence is sufficient to prove, that the whistle was not blown nor the bell rung as required by the statute, claiming that he was listening for those signals, and, because he did not hear them, did not look for the train nor pay attention to the noise it made. * * *

"While persons using a railway crossing have the right to expect that the law requiring signals will be obeyed, this is not a substitute for the duty of exercising care for themselves, and they are not excused from that duty by the fault of the other party. No case in this court has allowed a recovery upon facts such as these, and the judgment cannot be permitted to stand without abolishing the rule, recognized by all authority, requiring the exercise of ordinary prudence on the part of persons crossing railroad tracks."

What was there said applies with equal, if not greater, force as against plaintiffs in this case, in that the plaintiffs did not testify that in going upon the street railway track without observing the approach of the street car they relied upon an expected performance of any of the acts which the jury found that the motorman in charge of the street car negligently failed to perform, and upon which findings plaintiffs' recovery was based, and that but for such belief they would have discovered the approach of the street car in time to have avoided the collision.

In G., C. & S. F. Ry. Co. v. Gaddis, 208 S. W. 895, by the Commission of Appeals, it was held that Gaddis, who was killed by a passenger train at a public crossing in the city of Fort Worth, was guilty of contributory negligence, as a conclusion of law, and a judgment rendered in favor of his widow was reversed, and judgment was rendered in favor of the railway company. In that case the following was said:

"Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied."

In Sanches v. S. A. & A. P. Ry. Co., 88 Tex. 117, 30 S. W. 431, the following was said:

"Ordinarily, negligence is a fact to be found or inferred from the testimony; but where, from the testimony on the issue of negligence, no inference but negligence can be drawn, it becomes a question of law, and the court may instruct the jury that negligence has been established."

In G., H. & S. A. Ry. Co. v. Price, 240 S. W. 524, by the Commission of Appeals, a judgment in favor of Mrs. M. S. Price for

damages resulting from the death of her husband who was killed by one of the railway company's trains at a public crossing was reversed, and judgment was rendered in favor of the railway company. The opinion in that case reviews at length many decisions, and the following was said:

"The uncontradicted evidence and the specific findings of the jury present a clear case of a pedestrian stepping in front of a slowly moving train under circumstances which present no excuse for his not discovering it."

Many other decisions might be cited, such as S. A. & A. P. Ry. Co. v. Choate, 90 Tex. 82, 35 S. W. 472; Fort Worth & Denver City Ry. Co. v. Bell, Cause No. 12048, 14 S.W.(2d) 856, decided by this court, in which a writ of error has been refused, but the opinion has not yet been published; Houston & T. C. Ry. Co. v. Kauffmann, 46 Tex. Civ. App. 72, 101 S. W. 817, writ of error denied; Fort Worth & Denver City Ry. Co. v. Hart (Tex. Civ. App.) 178 S. W. 975; G., H. & S. A. Ry. Co. v. Bracken, 59 Tex. 71; B. & O. Ry. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645.

We shall not undertake a discussion of the many decisions cited by appellees to support their contention that the issue of contributory negligence was one for determination by the jury and not by the court. We believe it sufficient to say that at all events the facts of those cases are distinguishable from the facts of this case.

It will be noted that the issue of alleged negligence on the part of defendant after the peril of plaintiffs was discovered by the motorman was determined by the jury favorably to the defendant. And we might add that there was no testimony introduced which would have warranted any finding to the contrary.

From the foregoing conclusions it follows that the judgment of the trial court must be reversed and judgment must be here rendered. Therefore it is unnecessary to determine, and we do not determine, the merits of the several other assignments presented in appellant's brief.

### On Motion for Rehearing.

Appellees cite the following testimony of plaintiff Will T. White, as shown in the statement of facts:

"The line of the car track there ran east and west, and I looked this way (indicating), and I mean by that that I looked back east and when I looked west, I never saw any street car. * * * As to when I first observed the street car, I first heard the roar of it, and then it struck me. I could not tell you how long it was, but it was about (witness snaps fingers); I had already gotten on the track, and it missed the front of my car."

Also the following given by Mrs. Mary Etta White, plaintiff's wife:

"Before the collision took place, I looked to the west and I seen no street car, and I looked to the east and I seen no car and just in a second we were hit."

Both of those witnesses testified that at the time of the accident the sun was shining in the west; that the west window was down, leaving nothing to obstruct their view in a westerly direction. They further testified that their hearing was good. Plaintiff Will T. White testified that his eyesight was good, and his wife, Mrs. White, testified that she wore glasses, but by the use of the same her vision was good.

Appellees insist that it was within the province of the jury to accept the testimony just quoted as true, to the exclusion of other testimony given by them to the contrary, and that, if the same be accepted as true, it reasonably tended to refute the charge of contributory negligence on their part, and that therefore this court was in error in holding that contributory negligence on the part of the plaintiffs was conclusively shown as a matter of law.

It will be observed that in the testimony just quoted neither of the witnesses testified how far west he or she looked, or whether in the direction of the approaching street car, or in another westerly direction; nor did the plaintiff Will T. White testify how far he was from the track when he looked west. As pointed out in the opinion on original hearing, Mrs. White's testimony was that the automobile was only about 15 feet from the track when she looked west. Testimony contrary to well-known physical facts certainly cannot be given any probative force. If plaintiff Will T. White looked to the west and did not see the street car approaching until the collision occurred, as he testified was true, then it follows conclusively that he either did not look in the proper direction or else did not look far enough to discover the street car before the collision occurred. To say that on their testimony the jury would have the right to go further, and by indulging unwarranted inferences find that in approaching the point of collision plaintiff kept such a lookout for the approach of a street car as a person of ordinary prudence would have kept under such circumstances, and reject the other testimony of plaintiff and his wife that they did not see the street car until the collision occurred, when they could have seen it if they had looked, would be a mere play on words.

The same observation is applicable to the testimony of plaintiff Will T. White that the street car was derailed as a result of the collision, but that it was not knocked off the track by being struck by the automobile.

Appellees' motion for rehearing is overruled.