## THE MISSOURI PACIFIC RAILWAY COMPANY v. C. E. WHITE.

### No. 6444.

1. **Depositions—Rules in United States Circuit Court, Northern District of Texas.**—The rules adopted in the United States Circuit Court for the Northern District of Texas, adopted at its April Term, 1880, provide that "commissions to take examinations of witnesses and depositions and all testimony in any cause may be taken in the manner and subject to the regulations, so far as the same are applicable *mutatis mutandis,* prescribed by the laws of the State of Texas." This rule clearly authorizes the taking of depositions in the United States Court in the Northern District of Texas according to the State laws. Applied to a case removed to the United States court and retransferred, depositions having been taken while the suit was in the United States court.

2. **Negligence of Husband in an Injury to Wife.**—Under the laws of Texas the proceeds of a recovery for personal injuries to the wife become community property. The recovery is as much for the husband as for the wife, and for that reason his negligence would affect the right of recovery for injuries to her.

3. **Due Care—Contributory Negligence.**—Plaintiff sued for personal injuries to his wife caused by the negligence of the defendant. The plaintiff was in charge of a convict train upon the road of the defendant. He and his wife lived in one of the cars. The wife was not an employe of the defendant. The car in which was the wife was run upon by a water car. The collision threw the wife from a chair and caused great bodily injury. The charge of the court directed the jury to find for the defendant if the defects (causing the collision) were known to plaintiff, or ought to have been known to him by the use of ordinary diligence. It was the province of the jury weighing the testimony to decide whether a part of plaintiff's duty was to inspect the train or any of its machinery. It would have been improper to have assumed that his being in charge of the train devolved the duty upon him to inspect the train or its appliances.

4. **Practice—Burden of Proof.**—The court below properly charged the jury that the burden was upon the plaintiff to establish the facts that would entitle him to recover by preponderance in the evidence. It was not error to refuse an instruction asked by the defendant cautioning the jury against drawing inferences against it from the nonproduction of witnesses known to be in possession of facts bearing upon the case.

5. **Argument of Counsel.**—Counsel for plaintiff argued from the nonproduction by the defendant of witnesses known to be cognizant of facts, that such witnesses were not produced because their testimony would be adverse. Upon this subject reversal will not be had merely because of sophistry in argument or fallacious reasoning upon the facts when it does not appear that the jury were prejudiced thereby.

6. **Same.**—Nor will improper argument, *e. g.,* counsel avowing a personal interest in the verdict, accompanied by a vigorous protest against a compromise verdict and an insistence upon full damages, be a ground for reversal; it not appearing that the party complaining was injured thereby.

7. **Verdict Not Excessive.** — See facts sustaining a verdict for $5000 for bodily injuries upon the wife of the plaintiff.

8. **Newly Discovered Evidence as Ground for New Trial.**—See facts showing want of diligence to ascertain the value of the testimony before trial, and to obtain it when it is urged a's *newly discovered,* and as a ground for new trial.

APPEAL from Grayson. Tried below before Hon. H. O. Head. The opinion gives a statement.

*R. C. Foster* and *A. E. Wilkinson,* for appellant.—1. The court erred in overruling defendant's motion to suppress the depositions of plaintiff's witnesses C. E. White, Carrie White, W. T. Brown, Jake B. Pifer, John Saul, and William Sixhour. Rev. Stats. U. S., secs. 863–870; Sage v. Tauszsky, 6 Cent. Law Jour., 7, 8; 4 Fed. Rep., 714; 22 Fed. Rep., 199; 5 Dill., 481.

2. The court erred in refusing the first instruction requested by defendant. [See opinion.] Railway v. Bradford, 66 Texas, 732; Railway v. Robinson, 1 Texas Law Rev., 238; Railway v. McNamara, 59 Texas, 255; Railway v. Fowler, 56 Texas, 452; Stroble v. Railway, 28 Am. and Eng. Ry. Cases, 510; Alexander v. Railway, 25 Am. and Eng. Ry. Cases, 458; Wood's Mast. and Serv., 414.

3. The court erred in refusing the second instruction requested by defendant and in permitting the course of argument used by counsel in his closing speech, and plaintiff's counsel was thereby enabled to convey to the jury a false impression of their duties in weighing the testimony, and of the rules of law in regard to the burden of proof. [See opinion.]

4. Improper considerations were by the closing argument of plaintiff's counsel urged upon the jury. [See opinion.]

*C. B. Randall* and *W. W. Wilkins,* for appellee.

COLLARD, JUDGE.—This suit was brought in the District Court of Grayson County by the appellee against the appellant for damages for personal injuries sustained by plaintiff's wife on the 16th of November, 1885, through the negligence of the defendant.

Plaintiff was foreman of a convict gang employed on defendant's road and kept on a work train which was moved about on the road as needed.

Plaintiff and his wife lived together on the train in a car furnished by the company to plaintiff for that purpose, the wife not being in any sense an employe of the company. The injuries were alleged to have been caused, as correctly stated in appellant's brief, "by a sudden jar to the car by collision with a car forming a part of the convict train and used to supply it with water, which, after being taken off to be filled with water, defendant's employes were sitting in upon the spur track occupied by the convict train, against which it was permitted to strike with such force as to suddenly move plaintiff's car, throwing his wife down and inflicting injuries resulting in her miscarriage." The jar threw her over on a chair, producing the miscarriage as alleged and injuring her permanently, as is also alleged.

Defendant pleaded the general issue and contributory negligence.

On petition of defendant the case was moved to the United States Circuit Court for the Northern District of Texas, at Waco, and subsequently remanded to the State court by agreement of parties, where it was tried, resulting in a verdict and judgment for $5000. Defendant appealed and assigns error.

The first assignment of error is that the court erred in overruling defendant's motion to suppress depositions of plaintiff's witnesses C. E. White, Carrie White, W. T. Brown, Jake B. Pifer, and Sam Sixhour. Before the cause was moved from the State court to the Federal court plaintiff filed interrogatories to the witnesses named and had the precept served upon defendant's attorneys of record. The cause was removed to the Federal court on the fourth day afterward. Subsequent to this, while the cause was pending in the United States court, plaintiff had issued commissions to take the answers of the witnesses in form as prescribed by our State law, no cross-interrogatories having been filed. The depositions (except to one witness) were taken, and all of them except those of Brown were returned into the United States court, Brown's deposition being returned into the State court after the cause was remanded. Defendant's motion in the State court to suppress the depositions was overruled.

The contention of the appellant is that the State procedure being followed in the taking of the depositions and issuing commissions, the cause pending in the United States court, the same was void and illegal, and deprived it of notice of time and place of taking the answers. The rules adopted in the United States Circuit Court for the Northern District of Texas, which district includes Waco, adopted at the April Term, 1880, provide that "commissions to take examinations of witnesses and depositions and all testimony in any cause may be taken in the manner and subject to the regulations, so far as the same are applicable *mutatis mutandis*, prescribed by the laws of the State of Texas." This rule clearly authorizes the taking of depositions in the United States courts in the Northern District of Texas according to the State

laws, but if there were any doubt about it the decision of Judge Mc-Cormick in Warren v. Younger, 18 Federal Reporter, 859, would settle it in favor of the rule. When the right exists to take depositions in common law actions in the United States courts the parties may elect to follow the State or United States laws in taking. McLennan v. Railway, 22 Fed. Rep., 198. Justice Miller held the same view. Flint v. Board of Com., 5 Dillon, 481. But see *contra,* Sage v. Tauszsky, 6 Cent. Law Jour., 7; United States v. Pings, 4 Fed. Rep., 714. The assignment of error can not be sustained.

Appellant contends that the court erred in refusing the following charge requested by it:

"If you believe from the evidence that plaintiff C. E. White was foreman of defendant's convict train and that the water car was one of the cars composing said train, and that he (plaintiff) was in charge thereof, he would be charged with notice of such defects rendering the same unfit for use as might with reasonable diligence on his part have been discovered, and if under such circumstances such defects existed and plaintiff continued to use such car without complaint or notifying defendant thereof he would not be entitled to recover for any injury occasioned thereby, and you should find for defendant."

The instruction given by the court in the general charge upon this subject is as follows:

"If you believe from the evidence that the brakes on the car were not defective as alleged in plaintiff's petition, but were in a reasonably safe condition and suitable to perform the work required of them, or if defective such defects were known to plaintiff, or would have been known to him by the use of reasonable diligence on his part, you will find for the defendant. And you are instructed that if the car with such defective brakes was in charge of the plaintiff and it was a part of his duties to look after the condition of the same, he would be chargeable with notice of any defects therein which a diligent and close inspection on his part would detect; but if such car was not in charge of plaintiff and it was not a part of his duties to look after its condition, he would not be required to guard against injury from any defect therein not actually known to him, he having the right in such case to act upon the presumption that the defendant will keep its cars in good condition."

It was in proof that plaintiff had charge of the convict train and all the property of defendant at the convict camp, but that he had nothing to do with the movement of the cars or their operation. When he needed water he would inform the proper officers of the company and he would move the water car out, have the tanks filled and the car set back with the convict train. An employe of defendant testified that it was the duty of the plaintiff to report if there was anything out of order with the brakes. Plaintiff testified that he had no control of the water

car or its appliances; that he had never inspected it nor had occasion to do so.

Before considering the case further it might be proper to note that the case was tried below and is presented here upon the assumption that in a suit for personal injuries to the wife the husband's negligence would be imputed to her, and that if he knew of the defects in the brakes, or ought to have known, the fact would affect his wife's right to recover to the same extent that it would affect his rights had he been injured. He was an employe of the company; she was not. The authorities seem to hold generally that the negligence of the husband would be imputed to the wife. Yohn v. City, 60 Iowa, 433; Carlisle v. Sheldon, 38 Vt., 440; Hunton v. Trumbull, 2 McCrary, 315; Peck v. Railway, 50 Conn., 380; Railway v. Greenlee, 62 Texas, 352; Beach on Con. Neg., 114, 133; Sherm. & Redf. on Neg., 58. In Missouri a different doctrine obtains, because of a statute that makes the proceeds of such a recovery the wife's separate estate. Flori v. St. Louis, 3 Mo., 231. With us the proceeds of a recovery become community property; the recovery is as much for the husband as the wife, and for that reason his negligence would affect the right of recovery. Then we conclude that the case was correctly tried upon this theory.

We will now consider the above assignment of error. We think the charge of the court was as favorable to defendant under the facts as it ought to have been. It directed the jury to find for defendant if the defects were known to White or ought to have been known to him by the use of reasonable diligence. Appellant's objection to the court's charge is that it did not tell the jury, as the requested charge did, that if plaintiff was merely in charge of the train and water car he would be required to use reasonable diligence to ascertain the alleged defects, but told them he would be chargeable with ascertainable facts if he had charge of the train and *if it was a part of his duty to look after the condition of the same.* The distinction made by the court was correct and followed the evidence. White was in charge of the train as a work train and as property of the defendant, but it was not shown that such control made it his duty to inspect the same. He had nothing to do with the operation of the train or its movement. There was barely enough in the testimony even to justify the submission of the question as it was done by the court—a mere inference that he was required to inspect. From the evidence that he was required to report defects in the brake the jury might have drawn such an inference, if they had credited the statement of the employe who testified to the duty of making such report.

It was proper to submit the question as to whether plaintiff was required to inspect the train and look out for defects, without which he would not be chargeable with what he might have known. It was the province of the jury, weighing the evidence and judging the credibility of the witnesses, to decide whether a part of his duty was to inspect the

train or any of its machinery. This very question was left to the jury by the court's general charge, and it would have been improper to have assumed, as was done in defendant's requested charge, that his being in charge of the train devolved the duty upon him to inspect the train or its appliances.

Another assignment of error complains that the court erred in refusing to give a requested charge as follows: "The burden of proof is upon the plaintiff to establish the facts upon which his right to recover depends, and it was not the duty of defendant to produce witnesses to show the facts; nor can an inference be drawn from the fact that any person shown to have been present or to have had any knowledge of the transaction is not produced by defendant that the evidence of such witness would have been favorable to the plaintiff if he had been produced." In the same assignment of error it is insisted that there was error in permitting counsel to make the argument he did make to the jury in his closing speech as shown by bill of exceptions. The bill of exceptions shows "that plaintiff's counsel in his closing argument at great length told the jury that it was in the power of defendant to procure the attendance of witnesses from ·a distance, and asked why defendant did not produce as witnesses Dr. Graves and Dr. Lacy, shown by plaintiff's depositions to have attended his wife, the section hands and the convict guards present when the accident occurred, the car repairers Sixhour and Pifer, shown by plaintiff's evidence to have repaired the car instead of the roadmaster, who was an enemy to White; arguing that the defendant having means and facilities to produce these witnesses, it would have been done but for the fact that their evidence would have been unfavorable to defendant." ˙ Defendant's counsel objected to the argument because the burden of proof was upon plaintiff to produce evidence of his cause of action, and that the jury should not draw any inference from the absence of these witnesses that they would testify favorably for plaintiff.

On the subject of burden of proof the court instructed the jury as follows: "The burden of proof is upon the plaintiff to establish by a preponderance of evidence the facts necessary to entitle him to recover, but by this you are not to understand that the plaintiff is required to introduce a greater number of witnesses than the defendant, but only upon consideration of all the evidence introduced by both parties it must appear to you more probable that the truth upon the necessary facts to a recovery is with the plaintiff more than the defendant, and in coming to a decision you are the exclusive judges of the weight of the evidence and the credibility of the witnesses."

The court's charge was all that was required upon the burden of proof. It is customary to permit attorneys to comment upon the absence of witnesses or their nonproduction, when they are shown to be cognizant of the facts in issue; it is a mere matter of argument and

may be discussed by either side, trusting to the good sense of the jury to properly estimate the value of such argument. We are not prepared to say that any injury resulted to defendant by the course of the argument on this point, even if the argument was not properly deducible from the facts. Reversals will not be had merely because of sophistry in argument or fallacious reasoning upon the facts when it does not appear that the jury were prejudiced thereby. There must of necessity be allowed some latitude in debate. The attorney may discuss his case from an erroneous standpoint, but his errors are not errors of the court. The jury is not bound to believe him or accept his theories of the evidence. We do not find reversible error in this matter.

The next assignment of error relied upon by appellant is that improper considerations were by the closing argument of plaintiff's counsel urged upon the jury (as shown by defendant's bill of exceptions No. 3).

"The language used by counsel," says the court in qualifying the bill tendered by defendant's attorney, "was about this: 'If we are entitled to anything we are entitled to full damages, and we are not afraid of this mighty corporation beating us out of any verdict you may see proper to render. I do not agree with my co-counsel that $10,000 is enough—$10,000 is a small sum compared with the injuries my client has received. I feel as deep an interest in this case as any I ever tried. It is true that I have a pecuniary interest in the result myself, but the interest I feel on this account is insignificant when compared with the great interest I feel for my client when I contemplate his misery and ruin, caused by the negligence of the defendant. As to what is the measure of damages you, as twelve honest men, must decide, and whatever you think would be the amount you should have the manhood to give.' "

What we have said upon the next preceding assignment will apply to this in part. When the above statements of counsel are analyzed there is not much in them deserving of censure. Asking the jury not to bring in a compromise verdict could not be condemned. This was their duty. He had the privilege to urge his cause before the jury and ask them for large damages; the jury were not bound to give him what he asked. He stated that he did not agree with his associate counsel that $10,000 would be enough; the jury evidently did not follow the suggestions of either of the attorneys; they only allowed $5000. The jury were aware of their prerogative to award damages according to their sense of the merits of the case. The allusion of counsel to his pecuniary interest in the result of the case is the most reprehensible part of the speech, but we must say in justice to counsel that it does not appear that he intended the reference should influence the jury or any member of it on his own account. The allusion was slight—that is, it was not emphasized as a consideration for the jury, but it was im-

proper.   However, we are not advised that the remarks made prejudiced the jury or worked injury to defendant.   We do not feel authorized to reverse the judgment for this cause.   Hickey v. Behrens, 75
Texas, 488; McLane v. Paschal, 74 Id., 20; Beville v. Jones, 74 Id., 154.

The next assignment of error is that "the court erred in the second
paragraph of the charge."

No error is pointed out in the charge and the assignment should not
be considered, but under another assignment the charge has been considered and sustained.

It is also contended that the court erred in overruling a motion for a
new trial, "because the verdict of the jury is contrary to the evidence,
and is unsupported by the evidence, in this, that the evidence showed
that the circumstances were such as to charge plaintiff with knowledge
of the condition of the water car if the same was defective, and the
evidence showed that plaintiff's wife was not injured in the manner
claimed, and the damages were excessive."

There was evidence tending to prove that the injuries were inflicted
upon Mrs. White as alleged, resulting from a defective brake on the
water car; that defendant ought to have known of the defect; that
plaintiff did not know it, and was not charged with the duty of examining for such defects, though he was an employe of the company.   We
have no hesitation in saying that the verdict was supported by the evidence, and that Mrs. White was injured in the manner alleged.

Appellant contends that the verdict is excessive.   When the cars
collided she was sitting in the car on a chair; the shock threw her out
of the chair she was sitting in four or five feet across another chair.
She says she fell across the chair with her whole weight, receiving great
injury on the right side and bowels and she suffered great pain constantly for about two months in her back and bowels, and since then
she has suffered greatly from inflammation of the womb.   She was
treated by Dr. Graves of Whitesboro, Dr. Brown of Pilot Point, and
Dr. Lacy of Troupe, the latter treating her since she has been able to
be up.   She says she was pregnant at the time of the injury, and that
the injury resulted in the death of the child and a miscarriage.   Before
she was hurt she did her household duties, but has not been able to do
them since.   Dr. Brown, who was called to see her some three days after
she was injured, testified that he treated her for injuries to her person;
when he first saw her she was suffering from *prolapsus uteri,* accompanied with acute inflammation of the womb and ovaries, producing puerperal fever, and she was also suffering from injuries to the spine.   She
suffered and complained of great pain.   Witness thought her injuries
of the spine, womb, and appendages were permanent.   She had had an
abortion a few days before witness was called to see her.   He treated
her from the 15th of November to the 1st of December, 1885.   Witness
was sure the injuries she received caused the abortion.   The injuries

and its result of abortion had a bad effect upon her general health and "she is now an invalid." There was other evidence that she had several times miscarried before the injury, and it was shown that when once there was a habit of the kind it was easier brought on about the same period of gestation afterward, and it was also in evidence by a physician that if the shock complained of was sufficient to cause the miscarriage it would have occurred in a few hours afterward. It did not occur until ten days after the injury. There is quite an amount of evidence on this subject and a conflict in it. We need not state it further, as we have seen enough to know that there was sufficient testimony to sustain the verdict and to authorize us in saying that it was not so clearly excessive as to demand a reversal by an appellate court.

Appellant's next and last assignment of error is that "the court erred in overruling defendant's motion for a new trial because of newly discovered evidence of W. W. Graves." The evidence shows that Dr. Graves treated plaintiff's wife at the time of her miscarriage and is the same person alluded to in the closing argument of plaintiff's counsel.

The statement in appellant's brief as to diligence used to obtain the testimony of Dr. Graves is about correct. It is as follows.

"Dr. Graves was at that time a practicing physician, living at Whitesboro, Texas, but about a year before the trial he removed to Anadarko, in the Indian Territory, about two hundred miles from the place of trial, being under government employ there. There was no notary or officer there by whom his deposition could be taken.

· "Counsel for defendant wrote to Dr. Graves on August 15 inquiring what he knew about the case and whether his attendance could be had at the trial in case he knew of any facts material to the defense. Counsel did not know until an answer to this letter was received that said Graves knew of any facts material to the defense. Graves was absent at Fort Smith when the letter arrived at Anadarko, and did not receive it till his return home. His answer, which disclosed the fact that his evidence was material, was not received by defendant's counsel until after the case was given to the jury. It appeared that there was no legal means of procuring the testimony by deposition, but that the personal attendance of the witness could be secured upon another trial, or at some point where his deposition could be taken.

"The statement of Dr. Graves was to the effect that he was called to attend plaintiff's wife professionally at the convict train on the occasion of her suffering a miscarriage in November, 1885, which plaintiff and his wife had testified was about ten days after the alleged accident, and had attributed to the injuries then received. That she stated to him in regard to the cause of her miscarriage that she had on several times miscarried before and was strongly predisposed that way; also that she had to climb up the steps of the car where she lived and attributed her trouble to that cause together with the predisposition

caused by former abortions. She made no complaint of a collision with her car or of having received any injury. Plaintiff was present but was drunk at the time, and became abusive to his wife, and had to be put to sleep by drugs."

There is no reason given why defendant did not write earlier than he did to Dr. Graves. He wrote him on the 15th of August, 1887, ten days before the trial. The suit had been pending since January 30, 1886. It is not shown that he did not know from the beginning that Dr. Graves was the attending physician of Mrs. White during a part of the time of her illness. We are clearly of the opinion that no proper diligence was used to learn what his evidence would be. Had defendant's counsel been as prompt as required by law he would have known the facts and doubtless could have procured the depositions of the witness long before the trial. There being no officer at Anadarko or near there qualified to take depositions does not signify that the depositions may not have been had by the use of diligence. Graves' statement is not sworn to nor is there any reason shown why it was not done. But it is sufficient to say that defendant did not use diligence in learning the facts in Graves' knowledge.

Having considered every question of importance involved in the appeal that ought to be noticed, and finding no error, our conclusion is that the judgment of the court below ought to be affirmed.

*Affirmed.*

Adopted March 10, 1891.