## BOSTICK et al. v. TEXAS & P. RY. CO.
### No. 4636.

Court of Civil Appeals of Texas. Texarkana.
March 25, 1935.

Rehearing Denied April 18, 1935.

Jones & Jones and Julian P. Moseley, all of Marshall, for appellants.

King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellee.

HALL, Justice.

Mrs. A. B. Bostick, joined by her husband, G. S. Bostick, appellants, instituted this suit against the Texas & Pacific Railway Company, appellee, alleging that on June 3, 1931, after having purchased a ticket at New Boston, Tex., for Brookston, Tex., and while walking on the platform of appellee at its depot at New Boston, to board an approaching train, she was violently struck in the face and right eye by pieces of chat, rock, and gravel thrown from the platform, track, and rails by the incoming train. Mrs. Bostick and her husband alleged that this was an act of negligence on the part of the appellee for which it should respond in damages. The characteristics of this negligence on the part of appellee was alleged in many different ways. They alleged also as negligence the excessive speed of the train as it approached the station. The injury to Mrs. Bostick's right eye they alleged to be permanent, for which they asked damages in the sum of $60,000:

The appellee answered by general demurrer, numerous special exceptions, general denial, and that G. S. Bostick, husband of Mrs. A. B. Bostick, was guilty of contributory negligence, in that he knew of the condition of appellee's platform and track, and knew of the presence of gravel on the track and platform, and knew that passing trains on said track would cause gravel or rock to fly or be thrown; that, knowing said facts and conditions, he led his wife out of the station, or permitted her to go near to the approaching train of appellee; that he failed to warn her of the danger to her person from the flying rocks and gravel. Appellee alleged, fur-

ther, that the injury to the eye of Mrs. Bostick was slight and not of a serious nature; that on account of her neglect of the same its condition had become aggravated.

Trial was had before a jury on special issues, and in answer to said issues they found the railway company guilty of negligence in several particulars with reference to permitting loose rock, chat, and gravel to remain on its station platform between its track and depot in such position that it would be driven into plaintiff's eye by being brought into contact with moving trains; that this negligence on the part of appellee was the proximate cause of Mrs. Bostick's injury. The jury answered that appellee did not operate its train on the occasion in question at a negligent rate of speed. In answer to special issues submitting the defensive theory of appellee, the jury found that G. S. Bostick, husband of Mrs. A. B. Bostick, was guilty of negligence in leading his wife out on the platform in close proximity to the train on the occasion in question; that G. S. Bostick was guilty in not warning his wife of the danger of flying rock, chat, and gravel from appellee's approaching train, and in permitting his wife to go out of said station on said platform in close proximity to said moving train. These acts of negligence of G. S. Bostick, the jury found, caused, or contributed to cause, the injury to Mrs. Bostick's eye. Based upon these findings of the jury, the trial court rendered judgment for appellee railway company, from which judgment appellants prosecute this appeal.

Appellants bring forward ten assignments of error complaining of the action of the trial court in submitting the defensive issues of appellee to the jury, contending there was not sufficient testimony to warrant same, and in refusing to render judgment for the appellants for the amount of damages found by the jury.

The controlling question in this case, in our opinion, is, from the uncontradicted testimony in the record, Was G. S. Bostick, husband of Mrs. A. B. Bostick, guilty of contributory negligence as a matter of law?

It seems to be the settled rule of law of this state that the recovery for personal injuries to the wife constitutes community property. Ezell v. Dodson, 60 Tex. 331; Texas Central Ry. Co. v. Burnett, 61 Tex. 638; Feille v. San Antonio Traction Co., 48 Tex. Civ. App. 541, 107 S. W. 367, 369; Texas Law Review, Issue of February, 1935, p. 177. It is equally as well settled that the negligence of the husband in an action for personal in-

juries to the wife is imputed to the wife. Missouri Pacific Ry. Co. v. White, 80 Tex. 202, 15 S. W. 808; Northern Texas Traction Co. v. Hill (Tex. Civ. App.) 297 S. W. 778; Teague v. Fairchild (Tex. Com. App.) 15 S.W. (2d) 585.

The appellant G. S. Bostick, husband, had been the station agent of appellee railway company at New Boston for some four or five years prior to the date of the injury to his wife, but had been suspended by the railway company on the day before her injury. He testified he knew trains, both freight and passenger, would pick up chat and gravel from the track and station platform and throw it against the wall of the station adjacent to the track. This would occur whether the trains would run fast or slow. He knew that a windowpane of the station had been broken by flying chat, rock, and gravel thrown by a passing train. On one occasion he conversed with the roadmaster concerning the action of passing trains in throwing rocks, chat, and gravel. He had noticed this on many occasions. He knew his wife was going to board the morning train, and accompanied her from the station across or down the platform to meet the incoming train, allowing her to walk nearest the train. In connection with this statement it is thought proper to quote from his testimony:

"A. The station platform was rebuilt, you might say, during the time I worked there.

"Q. About when was it rebuilt? A. About the year 1929.

"Q. Of what was it constructed when it was rebuilt? A. It was constructed of a concrete curb and a rock base with chat on top.

"Q. How thick or deep was the rock structure of which it was built? A. I think that rock base was ten or twelve inches.

"Q. Then how deep was the chat or rock? A. About three inches.

"Q. Three inches on top of the rock? A. Yes, sir. * * *

"Q. This three-inch covering was put on top of that—about how large were the pieces of which that was constructed that made up that three inches? A. I would say the size of the end of your little finger, probably some larger and some smaller. * * *

"Q. State whether or not trains passing through and coming into the station at the depot here had any effect on this rock and this chat you speak of. A. It would disturb the chat on the platform.

"Q. To what extent would it disturb it? A. The speed of the train would cause it to suck these rocks on the platform and whip it along, and you could hear the pebbles striking the side of the station in there.

"Q. Do you know whether that movement of it, whether any of it would come in contact with the moving train? A. Yes, sir.

"Q. It would be hit by the moving train? A. Yes, sir.

"Q. What effect would that have on it, being hit by the moving train? A. The momentum of the train would suck the rock from the platform when the train struck it.

"Q. What would the rock do? A. It would drive the rock away from the train, naturally.

"Q. Approximately how far is the wall of the station from the railroad track? A. About 16 or 18 feet, I would approximate or estimate it. * * *

"Q. And of course, without surmising in the matter, you could not tell at all as to where whatever struck her in the eye came from? A. Well, no, I didn't see the rock.

"Q. Now, you state that prior to this time when trains came into New Boston, I believe you stated to Mr. Jones that they had been fanning up this chat rock off the platform and throwing it against the side of the station? A. Yes, sir.

"Q. You had seen that, had you? A. You can't see a rock shoot that way.

"Q. Had you seen it? A. No, I hadn't actually seen the rock—the train would come through and you would hear it. You get down there some time and listen, and you can hear rock strike the ground and cars and hit the station.

"Q. You are sure of that? A. Absolutely.

"Q. You said, as I understand, this morning to Mr. Jones, that when a train would come in there you would see it pick up rock from off the station platform and brush it against the train, and the train in turn knock it against the station platform and the building? A. Yes, sir.

"Q. Did you say that? A. I said the train picked up the rock and whipped it against the station.

"Q. Did you see the train suck up the rock? A. Yes, sir.

"Q. And suck it against the train, and the train hit it and knocked it against the side of the station? A. Yes, sir.

"Q. Did you see that? A. I didn't see the rock, I could hear them hitting.

"Q. And you could see them as they fell? A, I could see them falling on the ground."

This is only a portion of the examination and cross-examination of the appellant G. S. Bostick. The other portions of his testimony relative to his knowledge of the conditions around the station platform at New Boston and that the passing trains would throw chat, rock, and gravel is to the same effect as that copied.

In the very recent case of Wichita Valley Ry. Co. v. Fite, 78 S.W.(2d) 714, 715, 716, by the Eastland Court of Civil Appeals, opinion by Justice Funderburk, Fite and his wife were awarded damages for $5,000. Their automobile collided with a freight car on and across the public highway. They alleged several grounds of negligence, and the railway company pleaded in answer several grounds of contributory negligence. The jury found for the plaintiffs on two grounds of negligence and that same were the proximate cause of the injury. The jury found against the railway company on all phases of contributory negligence. The railway company appealed, and in reversing and rendering the case the court said:

"The appeal presents a number of very difficult questions arising upon this record, but, after careful consideration, we have concluded that it will be necessary to discuss but one proposition. The first question presented for decision is whether or not the evidence established conclusively as a matter of law that plaintiff Mrs. Artie M. Fite was guilty of, or chargeable with, contributory negligence. As a general rule, the existence of negligence, or contributory negligence, is a question of fact. 'Unless but one reasonable conclusion can be drawn from the evidence, the question whether there has been negligence or contributory negligence is a question of fact to be determined by a jury.' Galveston, H. & S. A. R. Co. v. Price (Tex. Com. App.) 240 S. W. 524, 526; Sanches v. San Antonio & A. P. Ry. Co., 88 Tex. 117, 30 S. W. 431; Ferrell v. Traction Co. (Tex. Com. App.) 235 S. W. 531; Kirksey v. So. Traction Co., 110 Tex. 190, 217 S. W. 139; Trochta v. Missouri, K. & T. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; Texas & N. O. Ry. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188. Where, however, but one reasonable conclusion can be drawn from the undisputed evidence, the question becomes one of law. It must be admitted that the rule last stated is not always easy of application. However, one test of somewhat limited scope, recognized by good authority, has the merit of reasonable certainty in cases where applicable. It so happens, we think,

that that test is one that can be applied in this case. It is that, where the undisputed evidence shows the existence of a danger and that the plaintiff, or injured party, had knowledge or was chargeable with knowledge of the danger and exercised no care whatever, then there is shown a case of contributory negligence as a matter of law. Gulf, C. & S. F. Ry. Co. v. Gaddis (Tex. Com. App.) 208 S. W. 895; Galveston, H. & S. A. Ry. Co. v. Price, supra; International & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; Bennett v. St. L. S. W. Ry. Co., 36 Tex. Civ. App. 459, 82 S. W. 333; Houston & T. C. Ry. Co. v. Kauffmann, 46 Tex. Civ. App. 72, 101 S. W. 817; Northern Texas Traction Co. v. White (Tex. Civ. App.) 19 S.W.(2d) 416." Texas Mexican Ry. Co. v. Hoy (Tex. Com. App.) 24 S.W.(2d) 18.

It is clear to our minds that Bostick, the husband, knew from long experience that passing trains on appellee's track would throw chat, rocks, and gravel across the railway platform against the wall of the depot. The undisputed facts from Bostick himself show this without any doubt. It might be said that he was the strongest witness on this phase of the case in his and his wife's behalf, and under these peculiar circumstances the stronger case his evidence made against the appellee railroad company the more completely he convicted himself of contributory negligence. If Bostick had been suing the appellee for personal injuries to himself brought about by flying chat on this occasion, no one would contend for a moment but that his own negligence would prevent a recovery. The same rule, moreover, which would apply to him personally, would apply to his wife. He went with his wife from the agent's office in appellee's depot, across the platform meeting an incoming passenger train which he knew would pick up and throw gravel and rock across the platform toward the station. He did this without warning his wife of the danger or in any way seeking to shield her from harm. He actually permitted her to walk nearest the train. Therefore, in our judgment, from his undisputed evidence, Bostick's contributory negligence arises as a matter of law, and is imputed to his wife, the alleged injured party. In our opinion, the trial court should have peremptorily instructed the jury in favor of appellee, the railway company. The trial court, after submitting the case to the jury and receiving their verdict, entered judgment for the appellee railway company, thus doing ultimately what he should have done at the conclusion of the testimony. This is a safe prac-

tice. All of appellants' assignments of error are overruled.

Finding no error in the record, the judgment of the trial court is in all things affirmed.