**CISCO & N. E. RY. CO. v. McCHAREN.**

No. 1809.

Court of Civil Appeals of Texas. Eastland.

June 10, 1938.

Rehearing Denied July 8, 1938.

H. C. Shropshire, of Weatherford, for appellant.

L. H. Welch, of Breckenridge, for appellee.

FUNDERBURK, Justice.

Roy McCharen recovered judgment below against Cisco & Northeastern Railway Company for damages in the sum of $2,750, from which the latter has appealed.

The appellant, defendant below, will be referred to as defendant, and appellee, the plaintiff below, as plaintiff, the same as in the trial court.

The cause of action involved a personal injury of plaintiff at the crossing of the railroad and a public street in the city of Breckenridge, which latter was also a part of three or four state highways.

Plaintiff's petition alleged grounds of negligence denominated (a) to (p), both inclusive. Of these sixteen grounds of negligence many of them were mere repetitions, in different form, of others. The defendant alleged seven grounds of contributory negligence, most of them being included, in whole or in part, in others, and some being mere repetitions in different words. The case was tried by a jury. The court overruled the request of defendant for a peremptory instruction of a general verdict in its favor. Seventeen special issues were submitted to the jury, supplemented by one other given at the request of defendant. The court refused to give 24 special charges and 81 special issues requested by the defendant. The special verdict returned by the jury comprised findings all favorable to the plaintiff, briefly, and in substance, as follows: (1) That defendant did not have a flagman or watchman at the crossing, warning persons about to use said crossing of the approach of the train; (2) that defendant's employees released two box cars and permitted them to be shoved across the street and uncontrolled; (3) that said employees did not sound the whistle and ring the bell on the engine at such a distance from said crossing as to be reasonably calculated to give notice to persons about to use said crossing, of the approach of the box car. It was further found in response to other issues that each of the above found acts or omissions constituted negligence and a proximate cause of the plaintiff's injuries. It was further found that the collision (between plaintiff's motorcycle and the box cars) was not occasioned by an "accident" nor "an unavoidable accident."

On issues of contributory negligence it was found by the verdict (1) that plaintiff did not discover the approaching box car (with which he collided) at any time as he approached or rode his motorcycle onto said crossing, in time to avoid the collision; (2) that the failure to so discover the box cars was not negligence; (3) that plaintiff was not guilty of negligence in riding his motorcycle at the rate of speed he did ride it in going onto said crossing. Damages as the result of injury sustained by plaintiff were found in the sum of $2750.

In answer to the single issue requested by the defendant, which was given, it was found that the plaintiff in approaching the railway crossing at the time and place of the accident, in the way and manner he did, under the then existing conditions, did not fail to use the care that a person of ordinary prudence under the same or similar circumstances in the exercise of ordinary care for his own safety, would have used to ascertain whether or not cars were moving over the crossing, before driving his motorcycle so near the crossing he could not stop the same in time to prevent the accident in question.

Defendant has filed a printed brief of 166 pages. Plaintiff has filed no brief whatever. Defendant's brief contains 66 assignments of error and the same number of propositions.

Defendant's first assignment of error presents for review the action of the court in refusing its request for a peremptory instruction. We shall reserve this question for the last part of the discussion.

■ Assignments of error numbers 2 to 4, inclusive, present for review the several actions of the court in refusing to give particularly requested charges. The case, as the foregoing statement discloses, was submitted upon special issues. The requested charges were upon the law of the case. The jury could have no proper concern with the law of the case. It should undoubtedly be considered as settled by this time that in a case submitted upon special issues it is not error for the court to refuse to give a requested special charge or instruction on the law of the case. On the contrary, it is improper to do so.

■■ Assignments of error numbers 5 to 28, inclusive, and the propositions thereunder, relate to the several actions of the court in refusing to submit requested special issues. We have considered all of said assignments of error, and it is our conclusion that they present no question of merit. Many of them constituted repetitions, with slight change in verbiage of issues that were submitted. Others relating to negligence of the plaintiff were not embraced in the special pleas of contributory negligence, and, therefore, not proper to be submitted for that reason. Most of them combined two or more issues in one.

■ At this point we pause to observe parenthetically that the subject of contributory negligence involves two distinct issues. It would generally be error to submit contributory negligence as one issue. The negligence of the plaintiff is not even a defense, unless it be a proximate cause of the injury. See authorities cited in Dunn v. Texas Coca-Cola Bottling Co., Tex.Civ. App., 84 S.W.2d 545.

■ Others of the requested issues were, as written, so conditioned that it would have been improper for the court to submit them, even if otherwise correct. As to such a request we may refer to our conclusions stated in Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849, wherein, upon the authorities cited, it was held that the request for a special issue must be accompanied (page 852) "with a correctly stated issue in such form that the court can make his action upon such request a matter of record simply by indorsing thereon 'given' or 'refused,' as the case may be." Unless a requested issue satisfies this requirement, there is no error in refusing to submit it.

■ The assignments and propositions relating to misconduct of the jury are overruled. There is no bill of exceptions supporting the assignments and consequently the record does not show what was the finding of the trial judge upon the issues of misconduct. Only two jurors appeared as witnesses. If the trial judge reached a conclusion from the evidence that there was no misconduct as alleged in the assignments of error, we could not disturb that finding. In other words, such finding, in our opinion, would not be without evidence to support it. We presume that the court made such finding.

■ The proposition relating to argument of plaintiff's counsel cannot be sustained because there is no authentication of sufficient facts, either by the bill of exception, or statement from the record made in defendant's brief, to show that the argument was not justified by the record. Un-

less an argument is of such a nature that it must be presumed that it was not justified by the record, then we think it is at least incumbent upon the appellant to show a state of facts from the record from which the impropriety of the argument may appear.

█ We have been unable to escape the conclusion that plaintiff's own testimony showed as a matter of law that he was guilty of contributory negligence. In Wichita Valley Ry. Co. v. Fite, Tex.Civ. App., 78 S.W.2d 714, in considering a similar question, we concluded from the authorities cited that there existed one test of the existence of contributory negligence as a matter of law which although "of somewhat limited scope" had "the merit of reasonable certainty in cases where applicable" (page 716). That test seems applicable in this case as it was in that. The test is: "Where the undisputed evidence shows the existence of a danger and that the plaintiff, or injured party, had knowledge or was chargeable with knowledge of the danger and exercised no care whatever, then there is shown a case of contributory negligence as a matter of law." In support of the proposition we cited Gulf, C. & S. F. Ry. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895; Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524; International & Great Northern Ry. Co. v. Edwards, 100 Tex. 22, 93 S.W. 106; Bennett v. St. L. & S. W. Ry. Co., 36 Tex.Civ.App. 459, 82 S.W. 333; Houston & T. C. Ry. Co. v. Kauffmann, 46 Tex.Civ.App. 72, 101 S.W. 817; Northern Texas Traction Co. v. White, Tex.Civ.App., 19 S.W.2d 416. Subsequent decisions to the same effect are: Missouri-Kansas-Texas Ry. Co. v. McLain, Tex.Com.App., 105 S.W.2d 206; Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564; Johnson v. Murray Co., Tex.Civ.App., 90 S.W.2d 920; Kypfer v. T. & P. Ry. Co., Tex.Civ.App., 88 S.W.2d 528; Bostick v. T. & P. Ry. Co., Tex.Civ.App., 81 S.W.2d 216.

According to plaintiff's own testimony he knew that no regular watchman or mechanical signaling devices were maintained at the crossing. He knew the traffic conditions at the crossing. The street was paved and was 100 feet wide. By his own pleading it appears that plaintiff in approaching the point where said thoroughfare crossed the tracks of defendant "was driving his motorcycle at a rate of speed at approximately 15 miles per hour." Plaintiff did not look in the direction from which the box cars were crossing the highway. The only possible act of care testified to by plaintiff had no reference to the danger incident to the presence of the railroad. He said he was looking straight ahead at a car approaching from the opposite direction and which indicated a purpose of the driver to turn to the left. "I thought this car was turning in and I was watching this car, looking ahead at this car, so if he pulled across ahead of me I could miss the car. * * * Q. When did you first see it? [Referring to the box car] A. Well, I was between ten and twelve feet from it when I saw it. I was watching that car [automobile] ahead of me, as it [the box car] came into my line of view; that is the way. * * Q. Just explain to the jury what happened there that morning. A. As I said, I was fixing to cross the track and a car was approaching from the east and I noticed the car slowed down and turned like it was fixing to turn into the ice plant and I was slowed down, looking straight ahead at the car and this box car just rolled into my line of view and when I saw it I was close on to it, right close to it. * * * Q. Just explain what caused this place in the trousers there. A. That is where my leg was hurt. That is where I hit the step of the box car. * * * (Italics ours.) Q. Now, how close were you to that box car when you first saw it? A. Well, I was right at it. I don't think I was further than eight or ten feet from it, if that far, right on it. * * * Q. As you approached that crossing, Mr. McCharen, could you see those cars to your right there as they approached the crossing? A. No sir, I couldn't see them. Q. What obstructed your view. A. Well, I will tell you, I was looking straight ahead at the car ahead of me. The truck would have obstructed my view, and the buildings there. I could have seen them if I was close enough, nearly to the track, that I could have seen the cars at the point where they come in across in front of me there if I had been looking down the track that way. I could have seen them when I first saw the car in front of me. * * * Q. Now, as a matter of fact, you knew that railroad track was there? A. You bet you. Q. Knew you were approaching it? A. Yes sir. Q. You knew there might be a train or cars over it, on it, any time, didn't you? A. Yes sir. * * * Q. Now, were you looking for a train? A. *I wasn't looking for a train.* I was looking for a car ahead of

me to turn. Q. You were not looking for a car on the track? A. I didn't see anything to cause me to think there might be one there. * * * Q. You were not looking for it? A. No sir. I was looking at the car. Q. You were not looking to the south to see if a train or car was approaching that crossing? A. *I didn't look that way.* * * * Q. How far was that car [box car] out in the street when you saw it? A. Ten feet, maybe. * * * Q. You were not listening for any whistle, were you? A. Not particularly listening for it. Q. You were not listening for the bell? A. I didn't hear any. Q. You were not listening for the bell? A. *I didn't listen for one.* * * * Q. You didn't listen for the train. You were looking at the truck and wasn't thinking about any train? A. I didn't pay the truck any mind. I knew I was running along by a truck. The man I was watching was a car on the other side of the track. Q. You were not expecting a train * * * A. I didn't see anything to cause me to be looking for a train. Q. You were not expecting a train, were you.

A. No sir. Q. You didn't look for it? A. I have crossed the track many a time— Q. Hurrying along to work? A. * * * *and I look for a train when I am on a track."* (Italics ours.)

It is needless to quote further evidence. There was no evidence from any source that the box cars were moving at a rapid rate. The conclusion seems irresistible that the box cars were well out in the street while the plaintiff was approaching quite a distance away. There seems to be no room for ordinary minds to differ in the conclusion that plaintiff exercised no care whatever to guard against any danger in crossing the railroad track. Under these circumstances we think no issue was presented for the jury; that a peremptory instruction should have been given. Had that been done it would render any of the other questions in the case immaterial. It is, therefore, our conclusion that the judgment of the court below should be reversed and judgment be here rendered for the defendant. It is accordingly so ordered.