**GULF, C. & S. F. RY. CO. v. BOUCHILLON et al.**

No. 2501.

Court of Civil Appeals of Texas. Eastland.

March 16, 1945.

Rehearing Denied April 13, 1945.

Terry, Cavin & Mills, of Galveston, and Dibrell, South & Snodgrass, of Coleman, for appellant.

W. Marcus Weatherred, of Coleman, for appellees.

LONG, Justice.

R. M. Bouchillon, as guardian of the estate of Audrey May Bouchillon and Sammy Joe Bouchillon, minors, Mrs. Joan Brooks, a widow, and Mrs. Fannie Bouchillon, a widow, instituted this suit to recover damages from Gulf, Colorado & Santa Fe Ry. Co. for the death of Homer B. Bouchillon and his wife, Vera Mae Bouchillon, as a result of a collision at a public crossing between defendant's passenger train and an automobile operated by Vera Mae Bouchillon, on the 14th day of February, 1944, and also for damages to the minor, Sammy Joe Bouchillon, by reason of personal injuries sustained by him as a result of such collision. Audrey May Bouchillon and Sammy Joe Bouchillon, minors, were the only children of Homer B. and Vera Mae Bouchillon, both deceased, and Mrs. Joan Brooks is the mother of Mrs. Vera Mae Bouchillon, and Mrs. Fannie Bouchillon is the mother of Homer B. Bouchillon.

This cause was tried before the court with the aid of a jury, and in response to special issues submitted, the jury found that the defendant failed to maintain a public road crossing where the collision occurred in a safe condition for the use of the traveling public, and that such failure was negligence and a proximate cause of the collision in question. That at the time and place of the collision the rails of defendant's track projected above the surface of the public road, and that such condition of the track was negligence on the part of defendant and a proximate cause of the collision. That those in charge of defendant's train failed to commence ringing the bell at a point at least 440 yards before reaching the crossing in question and continue to ring such bell until the collision, and that such failure to ring the bell was a proximate cause of the collision. The jury further found that $17,000 would fairly and reasonably compensate the minor children, Audrey May Bouchillon and Sammy Joe Bouchillon, for the pecuniary loss sustained by them by reason of the death of their parents, proportioning $6,000 of said amount to Audrey May Bouchillon and $11,000 to Sammy Joe Bouchillon, and that $3,000 would compensate Sammy Joe Bouchillon for personal injuries sustained and caused from the collision. With the consent of all the parties, the court withdrew from the consideration of the jury the cause of action alleged by Mrs. Joan Brooks and Mrs. Fannie Bouchillon, and found that neither was entitled to recover any judgment against the defendant. The jury acquitted the driver of the automobile, Mrs. Vera Mae Bouchillon, of all acts of contributory negligence on her part, and also acquitted the defendants of all other acts of negligence submitted and also found that the collision in question was not the result of an unavoidable accident. Upon the findings of the jury, as above set out, the court entered a judgment in favor of R. M. Bouchillon, as guardian, for such damages. Thereafter, the defendant filed its amended motion for a new trial. The court overruled such motion, to which the defendant excepted and gave notice of appeal to this court, and this cause is now properly before us for determination.

The appellant predicates its appeal upon 16 points. We will not attempt to discuss each point separately, but will endeavor to group them for the sake of brevity.

The first six points complain of the failure of the court to instruct a verdict in its favor and assert that the court erred in submitting the issues of negligence and proximate cause to the jury, claiming there

is not sufficient evidence to raise an issue of fact on any of such issues, and that there is not any causal connection shown between such alleged acts of negligence and the collision in question. The evidence discloses that on the afternoon of February 14, 1944, Homer B. Bouchillon and his wife, Vera Mae Bouchillon, deceased, and a lady friend, Mrs. Duggins, and Sammy Joe Bouchillon, left the home of the Bouchillons in Brownwood, traveling in a 1936 Nash Sedan. Mrs. Bouchillon was driving, Mrs. Duggins was in the front seat with her, Homer B. Bouchillon and Sammy Joe Bouchillon were in the back seat. The evidence further shows that there is a paved highway from Brownwood that parallels the appellant's railroad track, such highway and railroad track each running in the general direction of east and west. That the town of Santa Anna is located between the towns of Coleman and Brownwood, and that both the railroad and paved highway run through said town. About one mile east of the town of Santa Anna and in the direction of Brownwood there is located a dirt road that leaves the main paved highway and runs south, and at approximately one-half mile south of the paved highway the dirt road crosses over the tracks of the railroad company. The Bouchillons on the day in question travelled from Brownwood on the paved highway going toward Santa Anna and turned off onto the dirt road mentioned above. Their automobile collided with the defendant's train at the dirt crossing, and from the effect of such collision Homer Bouchillon died immediately and Mrs. Bouchillon and Mrs. Duggins died that night without either regaining consciousness. Sammy Joe Bouchillon, about two years of age, received serious personal injuries.

There was no witness to the accident who could describe how it happened. There was evidence that the view of a person traveling from the paved highway along the dirt road toward the railroad crossing would be obstructed by reason of trees and brush growing between the dirt road and the railroad track.

The evidence further discloses from several witnesses that the railroad crossing was very rough, and that the railroad rails extended several inches above the roadbed; that there were holes that had been made by traffic across said crossing. Some of the witnesses testified that it was necessary to put an automobile in low gear in order to drive across the railroad at the crossing. That the travelled portion of the crossing was narrow, and that the crossties were exposed and there was not sufficient chat between the rails so as to cover the crossties. We quote from one of the witnesses, Mrs. R. M. Hallmark, as follows: "It was such crossing that when we started to cross it my husband always changed gears, shifted gears. We would bump over one rail and then bump over the other. I could see rails and could see crossties." There was also evidence from several witnesses that just prior to the accident the bell on the defendant's train was not ringing, and from other witnesses that they did not hear the bell ringing, but that they were in a position to have heard it if it had been ringing. In passing upon whether or not the court erred in failing to instruct a verdict in favor of the defendants and whether or not there is sufficient evidence to raise an issue of fact as to the ringing of the bell and the failure to maintain the crossing in a safe condition and whether or not there is a showing of any causal connection between such alleged acts of negligence and the collision, we must view all of the evidence in the light most favorable to the appellee and from the standpoint of the injured party just before and at the time of the accident and reject all testimony favorable to the appellant. The record in this case is very voluminous. We have given it careful consideration, and after appraising all of the facts, we are of the opinion that the court did not err in refusing to instruct a verdict in favor of the defendant, and that the evidence is sufficient to raise an issue of fact upon the condition of the crossing and the failure of the employees of the railroad company to ring the bell, and we believe from the facts and circumstances in evidence that a causal connection is shown between such alleged acts of negligence and the accident in question. It is well established under the law and decisions of this state that negligence and proximate cause may be proved by circumstances and that where there is any evidence from which a jury might have properly found negligence and proximate cause, such finding is binding upon this court and we have no authority to disturb the same. 30 Tex.Jur. p. 826, sec. 150; Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723. It is not necessary in such cases that the jury should find the exact manner in which

the accident occurred so as to support a reasonable conclusion that there was a causal connection between the negligence found and the collision. Therefore, Points 1 to 6, inclusive, are overruled.

■ By other points in the appellant's brief it contends, in substance, that the driver of the automobile, Mrs. Vera May Bouchillon, was guilty of contributory negligence as a matter of law. The court submitted to the jury several issues upon this question. The jury found that the driver of the automobile did not fail to keep a proper lookout; that she was not guilty of negligence in the manner in which she operated the car as she approached the crossing; that she did not fail to exercise that degree of care that a person of ordinary prudence would have exercised under ordinary circumstances. The law presumes that Mrs. Bouchillon was doing whatever was reasonably necessary for her own safety, and we believe that the appellant must prove that she was not so doing in order to relieve itself of the consequences of its negligent acts. This presumption, we believe is greatly strengthened by the fact that Mrs. Bouchillon had in the car with her at the time her friend, Mrs. Duggins, her husband and her little son, just a little less than 3 years old. From the record she is shown to be a woman in good health, and the relationship between herself, her husband and her children was very pleasant. Her husband had sufficient earning capacity to provide and was providing the necessities of life. We believe under such circumstances there in a strong presumption that she would exercise that degree of care required of her by law in order to protect the lives of her loved ones, and not deprive her son and daughter of their father and mother. In support of this holding, we cite International-Great Northern R. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506; Towns v. Texas & N. O. R. Co., Tex.Civ.App., 112 S.W.2d 265.

We believe from a careful examination of the facts and circumstances in evidence that there was no contributory negligence, as a matter of law, shown, and that such acts of contributory negligence as complained of by the appellants were questions of fact for the determination of the jury. Wells Fargo & Co. v. Benjamin, Tex.Civ. App., 165 S.W. 120; Jacksonville Ice & Electric Co. v. Moses, 63 Tex.Civ.App. 496, 134 S.W. 379, writ refused; 30 Tex.Jur. p. 813, sec. 138.

By another point appellant complains of certain argument made by counsel for appellees in both his opening and closing speeches to the jury, and the refusal of the trial court to allow the appellant to place upon the witness stand its Claim Agent, Mr. J. F. Mahoney, after the evidence had closed and after the witnesses for both parties had been excused by the court. The argument of Hon. W. Marcus Weatherred, attorney for plaintiff, in his opening speech to the jury that is complained of, is as follows:

"* * * they show you these pictures here, pictures of that crossing showing it all level and smooth in between the rails; yes, and a commercial photographer took them.

"Mr. Photographer, who was down there when you got there to take those pictures? Mr. Mahoney, the Claim Agent for the Gulf, Colorado and Santa Fe Railway Company, was there. Look at the loose chats there, gentlemen; loose chats that anybody could have moved with their foot, so the testimony shows, or with a shovel. Counsel for the defendant—, why didn't Mr. Mahoney take this stand and tell this jury what happened down there after this collision occurred? Was it because he knew? I take it that by reason of his failure to take this stand that he did know. Why do I say that? Because he was down there; he went down there after this tragedy happened on the evening before the pictures were made; he went down there the next morning before the photographer got there; they did not go there together. I think that is the reason for Mr. Mahoney not taking the stand; and I think that the Railway Company, in all fairness and justice should have put Mr. Mahoney on the stand and let you gentlemen see him and hear his evidence as to what he did or knew about it; but on that disputed issue, the man who was there, claimed to have been there practically all the time, that is, he was there a considerable number of different times after this thing happened, I don't know if the evidence shows how long he was there, but he was there that evening after it happened, and he was there the next morning, and he had made arrangements with the photographer to go and take the pictures for the Santa Fe. Gentlemen, don't you suppose he got ready for the photographer to come? He was telling the photographer right where to stand. Mr. Photographer, why didn't you

take the pictures from over here instead of getting on the Santa Anna side of the road? Mr. Mahoney did not tell me to.

"Now, Gentlemen, you can take all types of pictures of anything; I take it that you can take pictures like one photographer who said 'Where there is beauty we take it and where there is none, we make it'; and you can have your picture taken and you may be as wrinkled as a man can be and they can make you so smooth and pretty that even your wife would want to kiss you. We have plenty of pictures in this case, gentlemen; they have taken enough pictures in this case to stock a photograph gallery. I will not take your time on the pictures except for a few things I call your attention to. Mr. Mahoney, in his zeal in getting the track in shape and having those chats in place, I take it from the way I look at it, got them pretty well all over the rails. I wonder where the trains would travel with the chats covering the rails in that manner."

■ The bill further discloses that counsel for appellant did not object to the argument. At the conclusion of plaintiff's opening argument counsel tendered its Claim Agent, Mr. Mahoney, as a witness and requested the court for permission to put him on the stand and ask him about the matter set out in the above argument. The bill shows that all of the witnesses had been excused, and that the evidence in the case was closed. The evidence was conflicting as to the condition of the crossing. Witnesses for the plaintiff testified that the condition of the crossing as disclosed by the pictures introduced by appellant was not the same as it was at the time of the accident. It is shown from the record that the witness J. F. Mahoney was the Claim Agent for the Railroad Company, that he had gone to the railroad crossing in question about 10 o'clock the next morning following the accident and had caused a number of photographs to be taken under his direction. That said witness was present in court at all times during the trial, was sworn as a witness and was by the court permitted to remain in the court room throughout the trial and frequently conferred with counsel for the defendant. We believe from an examination of the bill and of the record as a whole that the argument made by counsel for the plaintiff was a legitimate argument. Galveston Theatres, Inc., v. Larsen, Tex.Civ.App., 124 S.W.2d 936. It

was within the discretion of the trial court as to whether he would permit the case to be reopened and allow counsel to place the witness on the stand. We believe under the circumstances the trial court did not abuse his discretion in refusing to allow such procedure.

Counsel for the plaintiff in his closing argument to the jury made the following statement: "Mr. Mahoney had the pictures made, and he was there. They say, Oh, we tendered you Mr. Mahoney. We don't want him; I wouldn't have him; but they didn't put him on. Yes, they tendered him after the testimony had closed, gentlemen; but he was here all the time, and he was their witness, and they did not put him on the stand; and I say again, the reason they did not was that Mr. Mahoney likely knew a little too much."

■ Counsel for appellant objected to such argument and requested the court to instruct the jury not to consider it for any purpose. The court sustained the objection and did instruct the jury not to consider said argument. We believe no error is shown.

■ We understand the law to be that an attorney may comment upon the failure of opposing counsel to place a witness upon the stand when such witness is shown to be available and cognizant of the facts. Missouri Pac. R. Co. v. White, 80 Tex. 202, 15 S.W. 808; Texas Cities Gas Co. v. Gomez, Tex.Civ.App., 160 S.W.2d 74; Holder v. Martin, Tex.Civ.App., 131 S.W. 2d 165.

The court submitted to the jury special issue No. 1 as follows: "Do you find from a preponderance of the evidence that at the time of the collision the defendant failed to maintain the public road crossing where the collision occurred in a safe condition for the use of the traveling public?"

The court also inquired of the jury whether such failure was negligence and a proximate cause of the collision. Defendant objected to said three special issues as follows: "Defendant objects and excepts to Special Issues Nos. 1, 2 and 3 in the Court's general charge, because same are too general and not restricted to the character of unsafe condition alleged in the plaintiffs' petition, and further because the Court fails to define the phrase 'safe condition.'"

■ The court is only required to submit the controlling issues of fact as raised

by the pleading and evidence in the case. We believe the issues as submitted were the controlling issues as made by the pleadings and evidence. There is no showing that the jury considered any matters in passing on the issues, other than the facts in evidence in the case. We cite Rule 279, Texas Rules of Civil Procedure; Spears Dairy v. Davis, Tex.Civ.App., 124 S.W.2d 159; City of Winters v. Bethune, Tex.Civ. App., 111 S.W.2d 797; Shannon v. Horn, Tex.Civ.App., 92 S.W.2d 1090; Texas Employers Ins. Ass'n v. Fowler, Tex.Civ.App., 140 S.W.2d 545; Wichita Falls & Oklahoma R. Co. v. Pepper, 134 Tex. 360, 135 S. W.2d 79.

In order for the appellant to complain here of the failure of the court to define the phrase "safe condition", it was necessary that counsel for appellant present to the court a correct definition of such term. Rule 279, Texas R.C.P.; Great American Ind. Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312; Texas Employers' Ins. Ass'n v. Mallard, Tex.Sup., 182 S.W.2d 1000. No definition was furnished the court. Hence, no error is shown. However, if such definition had been furnished we do not think the court should have given same for the reason that the phrase "safe condition" is not such an expression as requires any definition or explanation. We are of the opinion that the exception to the court's charge as set out above is not sufficient to comply with Rule 274. Such rule provides that a party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objections. It will be noted that appellant leveled its exception to Issues 1, 2 and 3 of the charge, all being grouped in one exception. The exception does not point out in what particular the issues are too general and wherein they are not restricted to the allegations in the petition.

The appellant excepted to the submission of special issues Nos. 4 and 5 relating to the alleged projection of the defendant's railroad track above the surface of the public road upon the ground that said Issue No. 4 was upon the weight of the evidence, and is not restricted to the allegations of the plaintiffs' petition, and because same is not limited to such character of projection as to create a hazard to the traveling public. Special Issue No. 4, as submitted to the court, was as follows: "Do you find from a preponderance of the evidence that at the time and place of the collision the rails of the defendant's track projected above the surface of the public road?"

Issue No. 5 asked the jury if such condition was negligence, and No. 6 as to whether or not it was a proximate cause of the collision.

What has been said above as to appellant's exception to Issues 1, 2 and 3 is equally applicable to the exception to Issues 4, 5 and 6. We find no merit in this point.

We have carefully examined all of the points raised by appellant in its brief, and are of the opinion they do not show reversible error. The judgment of the trial court is affirmed.